## SAMUEL CURRIER *vs.* JOSEPH EARL.

Where the testator gave the use of his dwellinghouse to his widow during her life, and directed that she should be supported out of his estate, and in case of failure of performance, to have dower in all his real estate; gave legacies to his daughters to be paid by his executor; and devised his farm to the person named, as executor, on condition, that he discharge the duties required by the will; it was *held*, that these provisions for the widow and daughters, were legacies to them and a personal charge on the executor, but not a charge upon the land, after its conveyance by the devisee.

After such conveyance, between the grantee and grantor, the latter is estopped to deny the title of the former.

If the grantor continue his occupation after the conveyance, he is considered, as tenant at will to the grantee; and if the grantor deny the title of the grantee, and resist his claim, as owner, the latter may elect to consider him a disseisor, and maintain a writ of entry against him, as tenant of the freehold.

Where a tenant at will terminates the tenancy by his own acts, he is only entitled to a reasonable time for removal, before process of law will lie to effect it.

Where the premises consisted of tillage, mowing and pasturage land, a notice of forty-five days was held sufficient.

THIS was a writ of entry, dated *July* 21, 1835, in which the demandant counted on his own seisin and a disseisin by the tenant. The general issue was pleaded, and a brief statement made by the tenant stating, that he was not at the time of the commencement of the action tenant of the freehold.

The land in controversy was once the property of *Daniel Wing*, and the demandant gave in evidence a deed from the tenant to himself, dated *Nov.* 30, 1833, of an undivided half of the farm formerly belonging to *Daniel Wing*, deceased; and shew a division with the owner of the other half, assigning the demanded premises to the demandant, as his sole property.

The tenant gave in evidence a copy of the will of *Wing* of which he was sole executor. By the will the testator gave the widow the use of the dwellinghouse during life, various articles of personal property, " a good and comfortable living out of his estate, to be provided for her by the executor in such manner, as she might reasonably request and desire;" and in case she should be dissatisfied with the support, maintenance, or treatment of said executor, then in lieu thereof, she is at liberty to take one third

part of all my farm in addition to the dwellinghouse and furniture" and also "to have the income of two cows, to be provided by said executor and kept at her own expense," and in such case, "my executor will be released from all obligation for her support." The testator gave to his two unmarried daughters, two hundred dollars each to be paid them by the executor; and made other provision for them, including the right to live in the dwellinghouse, while they remained single. The devise to the tenant was in the following words: "I give and bequeath unto *Joseph Earl* and *Henry Wing* all the rest, residue and remainder of my property, both real and personal, on the following conditions, *viz:* that the said *Joseph Earl* support and maintain my wife, his mother, to her satisfaction, as is heretofore mentioned, and support and maintain my two daughters, and pay to them two hundred dollars each, as therein mentioned, then he is to have one half of all the rest, residue and remainder of my property, as aforesaid."

The dwellinghouse was not upon the demanded premises, nor did the tenant reside thereon. After the deed of *Nov.* 1833, the tenant remained in the occupation of the demanded premises, consisting of mowing, pasturage and tillage land, until the commencement of the action, and by the demandant's consent until the sixth day of *June*, 1835, when he forbid the tenant "from touching, meddling or going on to the premises at his peril." There was evidence, on the part of the defendant, tending to shew, that at different times before the commencement of the suit, the tenant had denied the title of the demandant, refused to give up the possession, and claimed the property, as his own. And also on the part of the tenant, tending to shew, that after the 6th of *June*, the demandant had consented, that the tenant should continue his occupation indefinitely, or so long as he continued to support the widow. There was no evidence, that *Earl* had failed to perform the conditions expressed in the will. In the spring of 1835, the tenant built some fence, and ploughed up and put manure on some of the land, but it did appear that he planted before the sixth of *June*.

*Weston C. J.,* before whom the action was tried, instructed the jury, that the tenant after his deed in *November*, 1833, was only a tenant at will to the demandant, and that if he denied the

demandant's title, and disclaimed his tenure, in such case, that of itself was a determination of the tenancy, and a disseisin at the election of the demandant, and that he was not entitled to any other notice to quit, as his counsel had contended he was, than was proved to have been given him on the sixth of *June;* and that the demandant was entitled to their verdict, unless they were satisfied from the evidence, that subsequent to the giving of such notice, the demandant had revoked it, and consented, that the tenant should continue his occupation, which would be a waiver of his right to treat him as a disseisor, and that if so, the tenant had established the fact set forth in his brief statement, that he was not tenant of the freehold. The verdict was for the demandant. If they were not properly instructed, or if the court should be of opinion, that by the will of *Daniel Wing,* the tenant had a right to occupy the land notwithstanding his conveyance to the demandant, the verdict was to be set aside.

The case was argued in writing, by *Evans,* for the demandant, and by

*Wells,* for the tenant.

In his argument, the counsel for the tenant contended :

1. That the tenant was not *tenant of the freehold.*

The position of the demandant is, that the refusal of the tenant to remove from the premises is a disseisin done to him, and that thereby the tenant wrongfully acquires the freehold. It involves the inquiry, whether it was wrongful in the tenant to hold the property after his deed to the demandant. This deed conveyed only the right, which the grantor had in the premises, and could not transfer his right to act under the will of *Wing,* or give any rights he had to occupy the land under the will, as executor, to perform the duties incumbent on him, as such. The conveyance by the person, who happened to be both devisee and executor, of his right in the land, could not destroy or diminish the benefits bestowed upon others in the same will. The widow had the right to occupy the dwellinghouse, and have a comfortable living out of the estate, to be provided by his executor. He is not only to furnish fuel for the fires, but to make them, and to do many other acts, which could be performed only by entry on the land. This right and duty under the will is paramount to any individual

interest he took, as devisee. The demandant's claim must be in subjection to the will of *Wing*, and he can support no action against *Earl* for acting under it, and carrying its provisions into execution. The tenant may have done wrong in conveying the demandant more than he owned, and may seek his remedy in damages, but this does not preclude the tenant from saying that he is tenant or servant of another. The demandant cannot succeed in the discharge of the duties and offices prescribed in the will, because this cannot be transferred to another. *Clinton* v. *Fly*, 1 *Fair*. 292.

Should the demandant recover, as there would be no one in possession, who could perform the conditions upon which the farm was devised to the tenant, the heirs of *Wing* would have a right to it, and could recover it, and put the tenant in under them. *Gray* v. *Blanchard*, 8 *Pick*. 284. So that a decision in favor of the tenant would avoid circuity of action.

2. The tenant did not make himself tenant of the freehold in consequence of his refusal to deliver up the possession, when requested by the demandant, because he was entitled to a longer notice to quit.

Between the sixth of *June* and the date of the writ, there are but forty-five days. This was not enough. *Chancellor Kent* says, that the later and more liberal rule seems to be, that tenants at will are entitled to notice to quit before they can be evicted by process of law. *Kent's Com.* 4; 113, *3d. edition*. And that where no certain term is agreed upon, they are construed to be tenancies from year to year. *Ibid.* 111. The ancient rule of the common law required in such cases six months notice to quit. *Ibid.* 112, 113. Here the tenancy commenced when the deed was given in *November*, 1833, and for no definite term of time. The rule of the common law makes six months notice to quit necessary. That law was brought with us, as a part of our own, and why does it not remain so? True it is said, in *Ellis* v. *Page*, 1 *Pick*. 43, that a tenant at will is not entitled to common law notice to quit, but is to be allowed only time for a removal. By a note, in the case, *Coffin* v. *Lunt*, 2 *Pick*. 71, it appears, that Judges *Jackson* and *Wilde* dissented from this opinion, and *Chancellor Kent* refers with approbation to the opinion of the dissenting

Judges. In *Rising* v. *Stannard*, 17 *Mass. R.* it seems, that a reasonable notice was deemed proper, but in *Coffin* v. *Lunt*, 2 *Pick.* 70, the Court seem to consider the question, as not yet fully settled in *Massachusetts.* Well then may it be considered an unsettled question here.

But by all the authorities a reasonable time should be given. The counsel here brought to the view of the Court the various circumstances tending to shew, that in this case forty-five days was too short notice, cited the opinion of Judge *Putnam*, in *Coffin* v. *Lunt*, and the revised *statute* of *Mass.* in 1835, *part 2, tit.* 1, *ch.* 60, *sec.* 26, and contended, that three months was the shortest time which could be deemed reasonable in this case.

*Evans*, for the demandant, contended:

1. That the tenant was tenant of the freehold. He was in the actual occupation of the premises, and denied the right and ownership of the demandant, and refused to restore to him the possession. From the facts in the case, who was tenant of the freehold ? Not the widow, for she did not live upon the land, and no person but the tenant did. As it respects this question, not the question whether he had a right under the will to hold the possession against the demandant, the will, if it shews any thing touching it, shows that *Earl* was tenant of the freehold. The devise is to him of one half of the farm in fee, and in pursuance of it, he entered into possession, was seised, aliened, and even still claims to be in the absolute and undisturbed possession of the freehold. The demandant is kept out of the possession by the tenant, and there is no person against whom the action can be brought, but against him. As it respects this question, it is immaterial wherefore he sets up his claim to retain the possession, if he refuses to yield it up to the owner.

2. There is nothing in the will of *Daniel Wing* to defeat the demandant's title, or his right to the possession.

The tenant is estopped to deny the demandant's title. It emanated from himself, and he is not permitted to question it. He cannot aver, that nothing passed by his deed to the demandant. This is a well established principle. *Jackson* v. *Murray*, 12 *Johns.* 201; *Jackson* v. *Bull*, 1 *Johns. Ca.* 90; *Wilkinson* v.

Currier *v.* Earl.

*Scott*, 17 *Mass. R.* 249; *Co. Lit.* 45, 47; *Jackson* v. *Morris, Cro. Car.* 110.

But even if the tenant is permitted to deny the demandant's title, there is nothing in the will to defeat it. By the will, *Earl* was entitled to one half of all the property, real or personal, not before devised ; and if it was clogged with conditions, it was nevertheless alienable, and would pass "*cum onere.*" If the provisions of the will are not performed *to* her satisfaction, she may have dower, but until she asserts her claim, she has nothing in the demanded premises. It is enough that neither the widow has yet claimed dower, nor the heirs of *Wing* entered for forfeiture, and no facts have yet occured to warrant their doing so. The estate may well pass, and if such claims come, the demandant must meet them. The provisions for the widow were in lieu of dower, which she might have waived, and asserted her claim, but it may now be too late. *Reed* v. *Dickerman*, 12 *Pick.* 146. The direction of the will in regard to the support of the widow is a legacy to her to be paid to her by the executor, and like other legacies, " out of the estate." The articles necessary for her support may be furnished from any other land, as well as from this. *Earl* may be liable personally, and on his bond, but the land *is* not chargeable on that account, at the extent, further than by asserting her claim to dower. *Earl's* liability is as executor, *and not as devisee.* The case of *Clinton* v. *Fly,* cited on the other side, was one of personal confidence, growing out of the particular state of the parties. The payment of a legacy like this has not been so regarded. *Crooker* v. *Crooker,* 11 *Pick.* 252; *Farwell* v. *Jacobs,* 4 *Mass. R.* 634; *Wood J.* v. *Barstow,* 10 *Pick.* 368 ; *Baker* v. *Dodge,* 2 *Pick.* 619.

The condition in the devise to *Earl* is clearly a condition subsequent. It was not to be performed before the estate should vest in the devisee. Nor is it a devise in trust. Possession is not necessary to *Earl* to enable him to perform the conditions expressed in the will.

3. The only remaining inquiry is, what notice, if any, was the tenant entitled to before the demandant could maintain his suit ? It has been expressly decided in *Massachusetts*, *Ellis* v. *Page*, 1 *Pick.* 47, that one circumstanced like the tenant is not entitled to

notice. The whole Court did not concur, but the case has not been overruled. The dissenting Judges only contended for reasonable notice. The case of *Rising* v. *Stannard*, relied on upon the other side, is prior to *Ellis* v. *Paige*, and there only reasonable notice is held to be necessary. *Earl* was a mere tenant at will, and not entitled to any notice, for that cause; and also for another reason, that he had himself terminated his estate. The only reason in any case for giving notice is, that the tenant at will may know, that his tenancy is at an end, and when he puts an end to it himself, the reason fails. The denial of the title of the demandant by *Earl* was in itself a disseisin, and put an end to his tenancy. *Campbell* v. *Procter*, 6 *Greenl.* 12; 1 *Inst.* 556; 2 *Bl. Com.* 146. But if any notice to quit was necessary in this case, reasonable notice only was required, and that was given. The tenant did not dwell on the premises, and the only notice, which could be necessary was such, as should prevent a fruitless journey to the land, when he had no right to enter on it. If there were any emblements to which he was entitled, he had no right to retain the possession of the whole premises for that cause, but only the right of egress and regress afterwards to gather his crops without being liable to trespass. 2 *Bl. Com.* 145.

The opinion of the Court was drawn up by

WESTON C. J. — There can be no doubt but the tenant, under the will of *Daniel Wing*, was entitled to a vested interest in the premises in controversy, upon a condition subsequent. And although the devise is not in express terms to him and his heirs, yet it was by construction of law, the devise of a fee. First, because it operated upon all his real property, not previously devised; secondly, because it was attended with such a charge upon the devisee, that less than a fee might not prove a beneficial interest. The tenant then had an estate in fee. A right and power of alienation is one of its most valuable incidents. An express condition, that tenant in fee shall not alien, is void in law. *Lit. sec.* 360. *Doe ex dem. Mitchinson* v. *Carter*, 8 *T. R.* 57.

The house, which by the will was subject to the control of the widow of the testator, forms no part of the demanded premises. The support and maintenance of the widow and the two daugh-

ters of the testator, was charged upon the tenant. A provision of this sort has been adjudged to be a personal legacy to the objects of the testator's bounty. *Farwell* v. *Jacobs*, 4 *Mass. R.* 634; *Wood, Judge* v. *Barstow*, 10 *Pick.* 368; *Crocker* v. *Crocker*, 11 *Pick.* 252. If the tenant, as residuary legatee, gave bond to pay the debts and legacies, that affords security to the other legatees. If not, the widow, if dissatisfied, may take to herself, by the express provisions of the will, the use and occupation of a third part of the estate. And the daughters, if their maintenance is withheld, as heirs at law, may enter for condition broken. Their security is ample to enforce performance of the bequest to them.

The tenant may provide for the support of the widow and daughters, without occupying the estate devised. His tenure could not be regarded such, as to confine him to that position, for their lives and the life of the survivor of them, if they remained unmarried; and thus to cut him off from all hope of bettering his condition, by a change of residence, or by seeking other business or employment. No such condition is expressly imposed; nor does it necessarily result from the duties prescribed to him.

This case differs from that of *Clinton* v. *Fly*, cited for the tenant. That was in relation to a personal trust, resting in contract, which from its peculiar circumstances, the Court held not assignable to strangers. Here the trust assumed by the tenant, as executor, is not assigned. It is still his personal duty to furnish the maintenance, provided by the testator for his widow and daughters. He has only conveyed that, which was given him as the consideration for the performance of this duty. And we are of opinion, that the tenant had, as incident to his estate, the privilege of alienation, which he undertook to exercise. It is true the objection to this power is interposed by himself. He now deems it for his interest to contend, that he never had any such privilege. He first sells his land, and receives his pay for it, and then invokes the aid of the Court to permit him to retain it. We cannot but regard the claim as little consistent with morals, as with the principles of law.

It does not appear that any question as to the demandant's title, was raised at the trial; but as it has been presented in argu-

ment, we have examined the right of the tenant to convey. But if he conveyed without right, he would have been estopped by his deed to deny the demandant's title. After that deed, he occupied as tenant at will to the demandant. One point taken is, that the action cannot be maintained, because he was not tenant of the freehold. We cannot however entertain a doubt, that his continuing to hold adversely to the demandant, resisting his claim, and setting him at defiance, was a disseisin at his election. And this is a sufficient answer to that objection.

It is lastly contended, that the demandant could not terminate the tenancy and recover the land, without giving the tenant seasonable notice to quit, and it is denied that such notice was given. To this it may well be replied, that the same acts, which made him a disseisor at election, terminated the tenancy on his part. *Campbell* v. *Procter,* 6 *Greenl.* 12. But we have already decided, in the case of *Davis et als.* v. *Thompson, ante p.* 209, that where a tenancy at will is determined by the lessor, the tenant is entitled only to the emblements, and to a reasonable time for the removal of his family and property, with free ingress, egress and regress, for the enjoyment of these rights. In this case, there were no emblements. If the tenancy is to be considered as determined by the demandant, and not by the tenant, it appears that notice to quit was given by the demandant on the sixth of *June,* and the writ, it is agreed, was dated an the twenty-first of *July* following. That notice must be regarded as amply sufficient to enable the tenant to enjoy all his rights, and to justify the action, when it was instituted.

*Judgment on the verdict.*