Rush *et al. v.* Rush *et al.*

———————◆———————

RUSH ET AL. *v.* RUSH ET AL.

DEVISE.—*Condition Subsequent.*—A. devised certain real estate to his wife, during her widowhood, and after her death to their son, "provided he takes care of her during her natural life."

*Held*, that the son took a vested freehold interest in the real estate, to commence at the death of his mother; and that the condition that he should take care of her during her natural life was a subsequent condition.

SAME.— *Waiver.*—The performance of a condition subsequent may be waived by the party for whose benefit it has been made.

SAME.—If the son did all in the way of taking care of his mother that the circumstances seemed to require, and all in that direction that she required or would permit him to do, she waived any further care, and the estate of the son was not forfeited.

APPEAL from the Grant Common Pleas.

WORDEN, J.—Azel Rush made his will, by which he devised certain lands in Grant county to his wife, Sally Rush, during her widowhood. He also devised to his son, Thomas E. Rush, a portion of the same lands, at the death of the said Sally. The language of the will, in respect to the devise to Thomas E., is as follows: "I give and bequeath to my son, Thomas E. Rush, at the death of my wife, Sally Rush, provided he takes care of her during her natural life, fifty acres," etc., describing the land thus devised to Thomas E. Sally survived her husband some years, and, upon her death, Thomas E. entered upon the land thus devised to him.

This was an action by a part of the heirs of Azel Rush against the said Thomas E. Rush, and also against Noah Rush and Henry Rush, other heirs of Azel, who refused to join as plaintiffs, for a partition of the lands thus devised to the said Thomas E., the complaint alleging, "that during the life of the said Sally, the said defendant" (Thomas E.) "did not take care of and provide for the said Sally during her said life. Nor did he in any respect do and perform any of the conditions of said bequest; wherefore, the said plaintiffs aver that said land descended to said plaintiffs and defendants, as the heirs and children of said Azel Rush."

The defendant Thomas E. answered, first, by general denial; second, "that upon the death of his said father, Azel Rush, and the probate of said will, the said defendant accepted said devise to him, made by said will, upon the condition of taking care of the said Sally Rush, widow of

said Azel Rush, during her natural life; that defendant thereupon offered to said Sally to take care of her pursuant to said condition, which she, the said Sally, who took under the provisions of the said will, then refused to allow the defendant to do so. The defendant also says, that from the time of said offer, to the death of said Sally, he was always ready, willing, and able to perform said condition, but which performance she refused to accept; that said Sally, at all times after the death of said Azel, had ample means of her own for her support and maintenance;" third, "that upon the death of his said father, Azel Rush, and upon the probate of said last will, he, said defendant, accepted the devise so to him made by said will, upon the condition therein mentioned, to wit, that he, said defendant, should take care of said Sally Rush, his mother, during the term of her natural life. And the defendant avers that he did so take care of said Sally, so far as she would allow him to do so, and that he, defendant, at the time of said probating of said will, offered to said Sally, who took under the provisions of said will of Azel Rush, to take care of her, pursuant to said condition, which she refused him liberty to do. The defendant says that he remained willing and ready at all times to perform said condition from the time of said offer until the death of said Sally, which performance she refused to accept from said defendant. He also avers that said Sally had at all times, after the death of said Azel, ample means for her support."

Demurrers, for want of sufficient facts, were filed to the second and third paragraphs of the answer, but were overruled, and the plaintiffs excepted. The plaintiffs replied to the special paragraphs of the answer by general denial, and by two special paragraphs, which were stricken out on motion of the defendant.

The issues were tried by a jury, who found a general verdict for the defendant, and also returned answers to interrogatories, as follows:

"1st. Did Thomas E. Rush take care of Sally Rush,

widow of Azel Rush, according to the provisions of the last will of said Azel Rush? Answer. As far as Sally Rush desired him to do.

"2d. Did Thomas E. Rush offer to take care of Sally Rush according to the will of Azel Rush? Answer. He did.

"3d. Did Sally Rush, during her life, need care that was not rendered? if so, did or could said Thomas E. Rush have known that fact? Answer. It appears that at times she needed assistance, and that Thomas E. Rush knew it, and manifested a willingness to relieve her.

"5th. What was the physical condition of Sally Rush during the last years of her life? how old was she when she died? was she able to take care of herself? Answer. A portion of the time feeble; age between sixty-five and seventy years; not able to take care of herself all the time.

"7th. If Thomas E. Rush took care of his mother, Sally Rush, during her widowhood, state in what manner he cared for her. Answer. By hiring help for her while she was sick, seeing to her threshing, butchering, hauling wood, attending to her while sick, etc.

"8th. If Thomas E. Rush was prevented from taking care of Sally Rush, state in what way he was prevented. Answer. He was partially prevented from taking care of her by her refusing to accept some of his offers of kindness.

"9th. If the jury find that Thomas E. Rush offered to perform the conditions on which he was to have the land in controversy, was the same a conditional or unconditional offer? Answer. It was unconditional.

"10th. Was said Thomas E. Rush in a condition to take care of his mother? Answer. He was.

"11th. Did Thomas E. Rush take care of Sally Rush, widow of Azel Rush, after the death of said Azel Rush? Answer. He did, as far as she desired him to do so.

"12th. Did Thomas E. Rush, at any time after the death of Azel Rush, offer to said Sally Rush to take care of her? Answer. He did.

"13th. Did Sally Rush, widow of Azel Rush, at any time

decline to accept the care of said Thomas E. Rush? Answer. She did.

" 14th. Did Thomas E. Rush, at any time after the death of Azel Rush, propose to Sally Rush, widow of said Azel Rush, to take her, said Sally, to his home and take care of her if she would allow him to do so? Ans. He did.

" 15th. If there was any failure on the part of Thomas E. Rush to take care of said Sally Rush after the death of Azel Rush, did it arise from the refusal of Thomas E. Rush to take care of her, or did it arise from her disinclination to accept such care from him? Ans. From her disinclination to accept such care from him.

" 16th. If Sally Rush, after the death of her husband, was deprived of any of the necessaries and comforts of life during her widowhood, did it arise from the neglect of Thomas E. Rush, or was it her own free will and choice to live as she did live? Ans. It did not arise from his neglect, but was her own choice.

" 17th. If Sally Rush, during her widowhood, lived in a a place where and as she desired to live, did Thomas E. Rush render such care, protection, and assistance to her as could reasonably be required of him under the circumstances and in the condition in which she voluntarily placed herself during that time? Ans. She did live in the place and in such manner as she desired, and Thomas E. Rush rendered her all the assistance and gave her all the care and attention that was required of him under the circumstances."

The plaintiffs moved for judgment in their favor on the special findings, notwithstanding the general verdict, but the motion was overruled. They also moved for a new trial, but the clerk states that the reasons are not on file. The motion was overruled, and judgment was rendered for the defendant. The plaintiffs below appeal and have assigned supposed errors, which will be considered, so far as any point is made upon them.

The counsel for the appellants, in their brief, make but three points in the case, viz.: first, that the demurrer should

have been sustained to the second and third paragraphs of the answer; second, that the motion for judgment for the plaintiffs on the answers of the jury to the particular questions of fact propounded to them, notwithstanding the general verdict, should have been sustained; third, that there should have been a new trial, on the ground of the admission of incompetent testimony.

The latter point does not arise in the case, inasmuch as the reasons for a new trial are not in the record, and we cannot assume that a new trial was asked on that ground.

We proceed to the consideration of the other two questions.

We have seen that by the will of Azel Rush, he devised to his wife, Sally Rush, the land in controversy, with others, during her widowhood, and after her death, to his son Thomas E. Rush, provided he took care of her during her natural life. Under this devise, Thomas E. Rush took an estate in remainder upon condition, which vested in him upon the death of the testator and the acceptance of the devise by the devisee. The title to the remainder vested in the devisee, Thomas E. Rush, at once, upon his acceptance of the devise; an estate was vested in him *in præsenti*, but to be enjoyed *in futuro*. 2 Bl. 163, and following. The proposition, that Thomas E. Rush took an estate in remainder, is based on the theory that the widow took a life estate, so that her estate and the remainder would constitute the entire estate. But we have seen that the land was devised to her only during her widowhood; her estate might, therefore, perhaps have terminated by her marriage, and in that event the title, during the interim between her marriage and death, would have reverted to the heirs. But there is no difficulty on this point, as our statute allows a freehold to be created, to commence at a future day. 1 G. & H. 266, sec. 37. In any view of the case, therefore, Thomas E. Rush, upon his acceptance of the devise, took a vested freehold interest in the estate, to commence at the death of his mother, Sally Rush. The condition, then, was a subsequent condition. *Petro* v. *Cassiday*, 13 Ind. 289; *Boone* v. *Tipton*, 15 Ind. 270.

It is well established that the performance of a subsequent condition may be waived by the party for whose benefit it was made. See cases cited above from 13 and 15 Ind. Says Mr. Washburn: "As a condition subsequent may be excused, when its performance becomes impossible by the act of God, or by the act of the party for whose benefit it is created, or is prohibited or prevented by act of the law, so it may be waived by the one who has a right to enforce it." 1 Washb. Real Prop. 453.

In a note to 2 Greenl. Cruise Real Prop. 29, it is said: "The party to whom the condition is to be performed may also waive the forfeiture; in which case the condition is saved;" and a number of authorities are cited.

Applying these principles to the two paragraphs of the answer, they were good. They show that the defendant Thomas E. did all in the way of taking care of his mother that she would permit him to do, and that was all that could be required of him.

So the answers of the jury to the interrogatories show that the defendant took all the care of his mother that circumstances seemed to require, and did all in that direction that she required or would permit him to do. We think the widow clearly waived any further care than was devoted to and bestowed upon her by her son, and therefore that his estate was not forfeited. The rulings of the court were right, and there is no error in the record.

The judgment below is affirmed, with costs.

*J. Brownlee, H. Brownlee,* and *J. L. Custer,* for appellants.

*A. Steele, R. T. St. John, J. Van Devanter,* and *J. F. McDowell,* for appellees.