LINDSEY *v.* LINDSEY ET AL.

WILL.—*Life Estate.*—*Remainder.*—*Condition Subsequent.*—*Charge upon Real Estate Devised.*—A testator by his will, directed that his wife should hold possession of his farm and receive annually one-third of all the farm should produce, as long as she should live, and that his son A. should receive one bed and two hundred dollars in money, which had already been paid him; and, further, that his son B. should remain and attend to the farm and transact all business connected therewith, as the testator would do, if living, and pay to the testator's two daughters two hundred dollars each, and one bed and bedstead

Lindsey *v.* Lindsey *et al.*

each; and at the death of his wife, the said farm with all personal property and appurtenances was to accrue to B. in fee simple. The daughters were also directed by the will to allow B. time, not less than five nor more than seven years, to pay them the two hundred dollars each.

*Held,* that the will created a life estate in the wife in all the lands devised.

*Held,* also, that the remainder in fee passed to B., upon condition that he should remain on the farm, support his mother, and pay the sums named to his sisters.

*Held,* also, that the conditions in reference to the wife of the testator and the legacies to his daughters created a charge upon the lands devised to B. and constituted conditions subsequent.

SAME.—*Conditional Devise.—Construction of Will.*—If it is to be gathered from all the provisions of a will, that the expectation of the performance of the duties imposed on the devisee, by the will, served the purpose of a consideration to induce the devise, and that but for that expectation it would not have been made, and that it was not intended that the devisee should receive and retain the property unless he should discharge the duty, then the devise must be regarded as conditional.

SAME.—*Condition Subsequent.—Forfeiture of Estate.—Demand and Refusal to Perform Condition.*—Before there can be a forfeiture of an estate held on condition subsequent, there must be a demand on the part of the person entitled to insist upon its performance, and a refusal on the part of the person in whom the title is vested whether the condition consist in the payment of money or the performance of some other act.

From the Wells Common Pleas.

*N. Burwell* and *R. S. Taylor,* for appellant.

*G. S. Brown,* for appellees.

BUSKIRK, J.—This case depends upon the construction of the will of William Lindsey, deceased, who died March 10th, 1863, seized of the lands in controversy. The parties to this case are the four children and only surviving heirs of the testator. The testator left a widow, who died in October, 1868. This suit was brought by the appellant for partition of said lands, who claimed to be the owner of one undivided fourth of said lands as an heir at law of the said William Lindsey, deceased. The defendants answered separately; all alleged that the lands described in the complaint had been devised to the defendant William Lindsey, and set out the will of William Lindsey, deceased, as the source of title. It appears from such answers that shortly

before the commencement of this action, the defendant William Lindsey had conveyed the undivided half of said lands to his co-defendants, Sarah M. and Julia.

The plaintiff replied in two paragraphs. The first was in denial. The second was as follows: "And for further and second reply to the answers of Julia A. Hartman, Sarah M. Lindsey, and William Lindsey, says that he admits the execution of the will mentioned in the defendants' answers, but plaintiff avers that the said land devised as aforesaid was upon the condition that said William should remain and attend to said farm and transact all business connected therewith, as the testator himself would have done if living, and that the said William should pay to testator's two daughters, Julia Ann and Sarah Margaret, two hundred dollars each, and one bed and bedstead each, and that the said sums of two hundred dollars each, to be paid to the daughters aforesaid, should be so paid within seven years after the decease of the testator. Plaintiff avers that at the time of the execution of said will, and at the time of the death of the testator aforesaid, the plaintiff was living away from the home and place of the testator; that he had theretofore received from the testator the sum of two hundred dollars; that the defendant William was, at the time of the execution of the said will and at the time of the death of the said testator, living at the home and place of the said testator, and was at that time doing the ordinary and necessary work upon the farm of the said testator, and that up to that time the said William and the said Julia Ann and Sarah Margaret had not received from the said testator any advancement; and the plaintiff avers that it was the will and intention of said testator that the said William should remain on the farm, attend to, and transact all the business thereon and pay to said daughters so named the said sum of two hundred dollars each, within the time named, in consideration for which, and upon the performance of said conditions, the said William was to take said land.

"The plaintiff avers that said William wholly failed and

Lindsey *v.* Lindsey *et al.*

refused to perform and fulfil the conditions before named, but that the said William, after the testator's death, left the home and place aforesaid and remained away, leaving his mother and sisters aforesaid without the aid and assistance to them which the testator intended and willed they should have, and the said William failed and refused to pay to Julia Ann and Sarah M. the said sum of two hundred dollars each, within said space of seven years aforesaid; wherefore the plaintiff asks that said devise be decreed to be void for the failure to perform the conditions aforesaid, and judgment in partition as heretofore asked, and for other proper relief."

The court sustained a demurrer to the second paragraph of the reply, to which ruling a proper exception was taken.

The cause was submitted to the court for trial and resulted in a finding for the defendants. The plaintiff moved for a new trial, which motion was overruled, and an exception was taken.

The plaintiff appeals, and assigns for error the sustaining of the demurrer to the second paragraph of the reply, and the overruling of the motion for a new trial.

The first assignment of error presents for our decision the correctness of the ruling of the court in sustaining the demurrer to the second paragraph of the reply; the solution of which question depends upon the proper construction to be placed upon the will of William Lindsey, deceased.

The substance of the will of William Lindsey, deceased, is as follows: After providing for his burial and the payment of his debts and a valuation of his real estate, the will proceeds:

"I direct that my wife, Margaret, hold the possession of my farm, situated in Lancaster township, and county and State aforesaid, and that she, the said Margaret, shall receive annually one-third of all the said farm produces, so long as she lives.

"I further direct that my son George shall receive one bed, together with the two hundred dollars which I have already paid him. I direct further, that my son William

shall remain and attend to my farm and transact all business connected therewith, as I myself would do if living, and that the said my son William· shall pay to my two daughters, Julia Ann and Sarah Margaret, two hundred dollars each; also, one bed and bedstead each. And I further direct that at the death of my said wife, the said farm, with all personal property and all appurtenances thereto belonging, shall accrue to my son William in fee simple.

"I further direct that the said my two daughters allow said William a reasonable time to pay the shares allotted to each, not less than five years nor more than seven."

What estates were created by the above will? This is to be determined by considering all the parts of it together, and giving effect to the intention of the testator as nearly as possible. Considered in this light, it appears to us that the will created, first, a life estate in the wife in all the lands devised. The testator directs that she shall "hold possession" of the farm, words of themselves sufficient to create a life estate, if not limited by other words. He directs also that she " shall receive annually one-third of all the farm produces so long as she lives." A devise of the income of a thing is a devise of the thing itself. The devise here is of one-third of all the farm produces, that is, one-third of the gross income. It is provided that William shall remain at home and attend to the farm ; but it was manifestly as the tenant of his mother. There could be no doubt of her right, in case of his abandonment of the farm, to let it to some one else. In no other way could she be secured in the enjoyment of the interests expressly bequeathed to her. It should be observed, also, that the estate of William is expressly fixed at the death of his mother. The plain and undoubted language of the will is as follows : "And I further direct that, at the decease of my said wife, the said farm with all personal property and all appurtenances thereto belonging, shall accrue to my son William in fee simple." The devise of a remainder to an·heir at law is of itself strong

evidence that the testator intended to precede it by a particular estate—strong enough to control in a doubtful case...

Taking all these circumstances together, it is quite obvious. to us that the testator intended to devise his farm to his wife for life, with remainder in fee to his son William, upon the conditions that he should remain on the farm and support his mother and should pay the sums named to his two sisters.

The next question, and the principal one in the case, is, was that fee absolute or conditional?

"It is well settled that no particular form of words is necessary to create a condition. If it is to be gathered from all the provisions of a will taken together, that the expectations of the faithful performance of the duties imposed upon the devisee by the will, served the purpose of a consideration in the mind of the testator, to induce the devise, and that but for that expectation it would not have been made, and that it was not intended that the devisee should receive or retain the property devised, unless he should discharge the duty, then the devise must be regarded as conditional.''

A brief reference to some of the decided cases will best illustrate the rule.

In *Wheeler* v. *Walker*, 2 Conn. 196, the testator devised to his two sons all the rest and residue of his estate, they paying to his two daughters, Patience Wheeler and Ann Wheeler, each three hundred dollars within one year after his decease.

It was held, that this devise created an estate upon condition, and that if the sons failed to perform the condition, the estate would be forfeited, and the land would descend to the heirs of the testator. It is well remarked in the opinion, that "in particular words there is no magic; their operation depends on the sense which they carry." The case is a leading one, and is cited in a great many subsequent decisions.

In *Downer* v. *Downer*, 9 Watts, 60, the language of the devise was as follows: "I give and devise unto my son L. D. a lot of ground known," etc., "provided, however, he shall

pay over to my executors for the benefit of the legatees, here-inafter mentioned, the following sums," etc.   Held to create an estate on condition.   See, also, *Campbell* v. *M'Donald*, 10 Watts, 179.

In *Hayden* v. *Stoughton*, 5 Pick. 528, the devise was of a certain lot of ground to the town, "for the purpose of building a school-house, * * * provided said school-house is built within one hundred rods of the meeting-house."   It was held that these words imported an estate upon condition, and that by the failure of the town to erect a school-house on the land within a reasonable time the land was forfeited to the residuary legatee.

In *Marston* v. *Marston*, 47 Maine, 495, the conditions imposed were precisely like one of those embraced in the case at bar.   The devise was as follows: "I give and bequeath unto my son Oliver B. Marston, all my property after his mother shall cease to be my widow, providing he shall live on the place and carry it on till that time in a workmanlike manner," etc.

The court say in the opinion: "By the third clause, the said Oliver was to have all the property, after his mother should cease to be a widow, if he should live on the place, and carry it on, until that time. By the facts agreed it appears that neither of these contingencies has occurred. The mother has not ceased to be a widow; and the plaintiff, instead of living on the place, and carrying it on, left the premises, of his own free-will and accord, after having been paid for all the services he had performed.   He thereby forfeited all right thereto under the will.   And he now has no rights therein, except as one of the heirs, whenever the title of the mother ceases, by death or otherwise."

In *Tilden* v. *Tilden*, 13 Gray, 103, there was the following devise: "I give and bequeath to my beloved wife, Abigail Tilden, during life, an honorable maintenance," etc., "to be provided for her by my son, Wales Tilden. * * * I also give and devise to my son, Wales Tilden, all my estate, * * * provided my son, Wales Tilden, shall in all respects

comply with what is enjoined upon him in this my last will."
By a codicil subsequently executed, the testator gave to his
daughter Sophia Tilden the use of certain land for life, and
of a part of the house on it, and directed Wales Tilden to
keep it in repair. The house burned down, and the failure
of Wales Tilden to rebuild was held to be a forfeiture of all
his rights under the will.

The case of *Doe* v. *Cassiday*, 9 Ind. 63, also reported in 13
Ind. 289, is still more strongly in point. Indeed, we cannot
see why it is not entirely conclusive of the case at bar. The
devise was as follows : " 1. I will and bequeath to my wife,
Sarah McCray, all my real and personal property, during her
natural life.

" 2. I will to my son John, after the death of my wife,
forty acres of land," etc.

" 3. I will and bequeath to my grandson, Phineas Cas-
siday, all the residue of my property, real and personal, after
the death of my wife; and further, it is my will, that he provide
for and furnish her with food and raiment, and all other neces-
sary things suitable to her age, during the term of her natural
life. And further, it is my will, that the said Phineas Cassiday
pay to my grandson Thomas Cassiday two hundred dollars in
one year after my wife's death, and two hundred dollars to
my grandson Aaron Cassiday," etc. The court say : "The
devise to Phineas Cassiday was plainly upon conditions sub-
sequent. And the estate vested in him immediately, upon the
death of the devisor, in virtue of the devise ; to be defeated,
however, if he refused or neglected to perform any of the
conditions specified in the will."

The phraseology of the will in this case is almost identi-
cal with that in the case at bar. Power is given to the exec-
utor, in case of failure of Phineas Cassiday to discharge the
duties imposed upon him, to sell the property, but that pro-
vision does not appear to us to be of any importance in con-
struing the devise. If the devise was conditional, and the
conditions were not performed, the executor would have

power to sell if necessary to pay legacies or debts, without special authority from the will.

It is settled that where there is a conveyance by deed from father to son, with a contemporaneous agreement on the part of the son to support his parents during their natural lives, the agreement to support constitutes a condition subsequent, notwithstanding the deed may be absolute on its face, and there may be nothing in any part of the agreement declaring a condition. A leading case upon this subject is *Leach* v. *Leach*, 4 Ind. 628, in which it was held that such a conveyance and agreement created a title upon condition subsequent, and that upon breach of the condition, the deed might be set aside by a court of chancery. We cannot see why the principle of that case is not fully applicable to the case of a will. There were there two distinct papers, but it was held that they were to be regarded as forming but one contract, and for that very reason it was held that the agreement imported a condition. Suppose, instead of a distinct agreement by the son, the deed had contained words to this effect: "In consideration that the grantee shall maintain the grantor during his natural life." In that case, there would have been no need of any agreement on the part of the grantee, other than that implied by the acceptance of the conveyance, to bind him to the performance of the condition. Such a deed would be precisely analogous to the will of William Lindsey. It is just as manifest that the expectation that his son William would remain at home, and take his place upon the farm, and provide for his widow in her declining years, and pay his daughters the sums bequeathed to them, formed in his mind the inducement and consideration upon which he was moved to devise his farm to his son, as if he had expressly so declared in his will. *Rush* v. *Rush*, 40 Ind. 83.

It is, however, insisted by counsel for appellee that the estate devised to William Lindsey cannot be regarded as a conditional one, because there is no express condition named in the will. There is a wide and marked difference in the

words required to create an estate upon condition by a deed of conveyance and by a will. To constitute a condition in a deed, there must be words which plainly import a condition, and whether there is a condition depends upon a construction of the deed, and the condition must manifestly appear from the words used; but in the case of a devise, it is not necessary that it should contain express words declaring a condition; it is a question of intention to be gathered from all the parts of the will. The difference between a condition in a deed and in a will is stated as follows by Washburn on Real Property, vol. 2, p. 3, 3d ed.: "Among the forms of expression which imply a condition in a grant, the writers give the following: 'On condition,' 'provided always,' 'if it shall so happen,' or 'so that he the grantee pay, etc., within a specified time,' and grants made upon any of these terms vest a conditional estate in the grantee. And it is said, other words make a condition, if there be added a conclusion with a clause of re-entry, or without such clause, if they declare, that if the feoffee does or does not do such an act, his estate shall cease or be void. What will or will not constitute a condition in a deed, is often a matter of nice construction by courts. Words, moreover, often create a condition in a will, which would not if made in a deed, as where in a will an intention is expressed, in devising the land, that the devisee should or should not do certain things in respect to it, it may be construed as creating a conditional estate in him."

Williams on Executors says: "No precise form of words is necessary in order to create conditions in wills; but whenever it clearly appears that it was the testator's intent to make a condition, that intent shall be carried into effect." To the same effect are the following cases: *Stark* v. *Smiley*, 25 Maine, 201 ; *Burnett* v. *Strong*, 26 Miss. 116; *Lessee of Worman* v. *Teagarden*, 2 Ohio St. 380; *Underhill* v. *The Saratoga, etc., Railroad Co.*, 20 Barb. 455 ; *Rogan* v. *Walker*, 1 Wis. 527; *Fox* v. *Phelps*, 17 Wend. 393; *Hapgood* v. *Hough-*

*ton,* 22 Pick. 480; *Tower's Appropriation,* 9 Watts & S. 103; *Mather* v. *McMichael,* 13 Pa. St. 301.

Whether the acts to be performed by the devisee are conditions precedent or subsequent to the vesting of the estate in him, does not depend upon the particular location of the words, or upon any particular expressions taken separately, but upon the intention of the parties, to be ascertained by an examination of all the provisions in the whole instrument. If the act or condition required does not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may be as well done after as before the vesting of the estate, or if from the nature of the act to be performed and the time required for its performance, it is evidently the intention of the parties that the estate shall vest and the devisee or grantee perform the act, after taking possession, then the condition is subsequent. 4 Kent Com. 125; 2 Bl. Com. 154; Co. Lit. 218; 1 Salk. 170; 1 Hill Ch. 360; 1 Bac. Abr. 642; Stearns Real Actions, 22, 23, 73; *Howard* v. *Turner,* 6 Greenl. 106; *Currier* v. *Earl,* 13 Me. 216; *Morton* v. *Barrett,* 22 Me. 257; *Sayward* v. *Sayward,* 7 Greenl. 210; *Hayden* v. *Stoughton,* 5 Pick. 528; *Finlay* v. *King's Lessee,* 3 Pet. 346; *Rush* v. *Rush,* 40 Ind. 83.

It is also insisted that the conditions imposed by the will upon William Lindsey did not create a charge upon the land devised, but only created a personal liability against the devisee.

The question whether real estate devised is charged with the payment of legacies has most frequently arisen between the legatees and devisees by proceedings in chancery to have a lien declared and enforced upon the land for the payment of the legacies. It is well settled that a devisee, who has accepted of the estate devised and bequeathed to him, is personally liable for the payment of the legacies created by the will, but this personal liability does not discharge the lien upon the real estate, where it is charged with its payment. The personal estate of the testator is the primary fund for the payment of legacies, unless a contrary intention is man-

ifested by the will; and before a legatee can resort to the real estate, it must be shown that the personal estate was insufficient or had been exhausted in the payment of debts or otherwise. Willard Equity, 488, 489; *Dodge* v. *Manning*, 11 Paige, 334; S. C., 1 Comst. 298; *Elwood* v. *Deifendorf*, 5 Barb. 398.

Willard, on page 489, states the law thus:

"The charge of a legacy upon real estate, in aid or in exoneration of the personalty, may be, and frequently is, created by implication merely. If the testator gives a legacy, without specifying who shall pay it, or out of what fund it shall be paid, the legal presumption is, that he intended it should be paid out of his personal estate only; and if that is not sufficient, the legacy fails. So, if he directs his executors to pay a legacy, without giving to them any other fund than the personal estate out of which they can pay it. But where the real estate is devised to the person who by the will is directed to pay the legacy, it has frequently been decided that such legacy is an equitable charge upon the real estate so devised, although the devisee is also the executor, or is the residuary legatee of the personal estate; unless there is something in the will itself to indicate a contrary intention on the part of the testator."

Story says, sec. 566 *b*: "If there be a general gift of legacies in a will, followed by a gift of the 'residue,' or 'rest,' or 'remainder,' and especially where all these terms are used with reference both to real and personal estate, the legacies will be regarded as a charge upon the realty. And if the residuary devisee mortgage the real estate, the mortgagee will hold subject to the legacies." 1 Story Eq. 602. See 1 Daniell Ch. Pr. 218; Adams Eq. 507, note 2, 5th ed.

The case of *Harris* v. *Fly*, 7 Paige, 421, is very much like the case under examination in its facts and questions of law involved, and as it is a leading and well considered case, we make an extended extract from the opinion of the court. The facts upon which the opinion of the court was based were these: Aaron Drum died in 1815, seized of the lands

in dispute. By his will he devised the same to his son, A. Drum, in fee, subject to the life estate of his mother, the wife of the testator, in the south part of the dwelling-house, and in one-third of the income of the farm, or so much thereof as she should want for her decent support, with fire-wood for one fire. He also gave to his widow two cows, six sheep, and the use of the household goods for life, with remainder to his two daughters after her decease. He then gave and devised unto each of his two daughters one thousand dollars, to be paid to them by his son A. Drum, the devisee of the real estate, in six equal annual payments, the first payment to be made one year after the death of their mother. The testator also appointed his son and two other persons executors, and directed them to dispose of so much of his personal property as was necessary to pay his debts and the expenses of administration; and he then concluded his will as follows: "And finally, all the rest and residue of my estate and effects, real and personal whatsoever and where-soever, not hereinbefore mentioned, or otherwise effectually disposed of (after payment of all my debts, legacies and funeral expenses, and other charges and deductions as afore-said), I give, devise, and bequeath unto my son, Aaron Drum." The question was, whether the legacies to the two daugh-ters was a charge and equitable lien upon the land devised to Aaron Drum. The court say:

"The testator does not in terms create an equitable charge upon the devised premises for the payment of the two lega-cies to the daughters. But that was not necessary; as the charge of a legacy upon the real estate of the testator, either in aid of or in exoneration of the personalty, may be and fre-quently is created by implication merely. The personal estate is the primary fund for the payment of debts and leg-acies. If the testator therefore gives a legacy without spec-ifying who shall pay it, or out of what fund it shall be paid, the legal presumption is that he intended it should be paid out of his personal estate only; and if that is not sufficient the legacy fails. So if he directs his executors to pay a

legacy without giving to them any other fund than the personal estate out of which they can pay it. But where the real estate is devised to the person who by the will is directed to pay the legacy, it has frequently been decided that such legacy is an equitable charge upon the real estate so devised, although the devisee is also the executor, or is the residuary legatee of the personal estate; unless there is something in the will itself to indicate a contrary intention on the part of the testator. Thus in the case of *Alcock* v. *Sparhawk,* 2 Vern. Rep. 228, where the testator devised his real estate to his brother and then gave a legacy of two hundred pounds to the complainant, to be paid by his executor within five years, and appointed the devisee the sole executor of his will, desiring him to see it performed; it was held that the real estate devised to the brother was charged with the payment of the legacy, the personal estate proving insufficient for that purpose. See, also, *Aubrey* v. *Middleton*, 2 Eq. Ca. Abr. 497; *Clowdsley* v. *Pelham*, 1 Vern. Rep. 411; *Elliot* v. *Hancock*, 2 Vern. Rep. 143; Story Eq. 494, note 2.

"In the case of *Webb* v. *Webb*, Barn. Ch. 86, where the testator in terms charged all his real estate with an annuity to his eldest son, and an annuity to his wife for her jointure; and devised a part of his real estate to his second son in strict settlement, and the residue of his real and personal estate to the same son in fee, and then directed that the said son should pay and discharge all debts and sums of money which the testator should owe at the time of his death, and all the legacies and sums of money bequeathed by his will, and gave certain legacies to his younger children; Sir THOMAS PARKER, sitting for the Lord Chancellor, decided that the real estate devised in strict settlement was charged with the payment of these legacies to the younger children, that being the only real estate undisposed of at the time of the testator's death. In that case, as in the one now under consideration, there was no express charge of the legacies to the younger children upon the testator's real estate; but the charge was implied from the fact that the second son, to whom the real

and personal estate were devised, was directed to pay those legacies. The subsequent case of *Lypet* v. *Carter,* 1 Ves. Sen. 499, decided by Sir JOHN STRANGE, the Master of the Rolls, in 1750, is also very similar to the one now under consideration. In that case, as in this, the testator commenced his will with a declaration of his intention to dispose of his worldly estate, and gave a legacy of one hundred pounds sterling to his daughter, which he directed his executor to pay, within a month after decease of the mother, to whom he gave a life interest in his real estate, with remainder to his only son in fee. And he gave his residuary estate also to his son and made him his executor, and appointed two other persons trustees and overseers of his will. And though the son renounced the execution of the will, upon its being admitted that the personal estate was insufficient to answer the charge, it was held that the legacy must be raised out of the sale of the real estate devised to the son, who by the will was directed to pay the legacy. In the present case the legacies to the daughters are not wholly charged upon the farm, specifically devised to the son who is directed to pay them, any more than in the case of *Lypet* v. *Carter:* For here, as in that case, the residuary estate which was also given to the son was likewise chargeable, and was the primary fund for their payment. And the son who has accepted of the estate devised is also personally liable for the payment thereof. Still there is an equitable charge upon the real estate, if there is no other fund out of which the legacy can be paid. See, also, *Hassell* v. *Hassell,* 2 Dickens, 527. The rule as to the equitable charge upon the estate devised is the same where the real estate is devised, either to the heir at law or to a stranger, upon condition that he pay the legacy. In the first case, although the devise to the heir is void, at law, yet in equity it is good as an equitable charge upon the land of the heir who is directed to pay it. *Smith* v. *Atterby,* 3 Rep. in Ch. 93; Freem. Ch. 136, S. C. And in the other case, where the devise is to a stranger upon condition to pay the legacy, though the legatee cannot enter, yet this court will

convert the heir at law into a trustee for the legatee, for the purpose of charging the land with the payment of the legacy.

"Upon a full examination of the authorities, therefore, I am satisfied that where real estate is devised upon condition to pay a legacy, or with a direction to the devisee to pay the legacy in respect to the estate so deviced to him, and because that real estate has thus been devised, such real estate is in equity chargeable with the payment of the legacy, unless there is something in the will to rebut the legal presumption'; or from which it can be inferred that the testator intended to exempt the estate devised from that charge."

In our opinion, the conditions in reference to the wife of the testator and the legacies to his daughters created a charge upon the lands devised to William Lindsey, and constituted conditions subsequent.

But a condition may be waived by one who has a right to enforce it, and a forfeiture may be saved though a condition has been broken, if the party who has the right to avail himself of the same waives this right, which he may do by acts as well as by an express agreement. 2 Washb. Real Prop., 3d ed., pp. 15, 16; *Rush* v. *Rush*, 40 Ind. 83; *Doe* v. *Cassiday*, 9 Ind. 63; S. C., 13 Ind. 289.

"But a mere silent acquiescence in, or parol assent to, an act which has constituted a breach of an express condition in a deed, would not amount to a waiver of a right of forfeiture for such breach." 2 Washb. Real Prop. 16, original paging; 1 Washb. 455.

A mere indulgence is never to be construed into a waiver of a breach of a condition. *Gray* v. *Blanchard*, 8 Pick. 284; *Jackson* v. *Crysler*, 1 Johns. Cas. 125.

It is well settled that before there can be a forfeiture of an estate held on condition subsequent, there must be a demand on the part of the person entitled to insist upon its performance, whether the condition consists in the payment of money or the performance of some other act, and a refusal on the part of the person in whom the title is vested.

In *Bradstreet* v. *Clark*, 21 Pick. 389, Henry Bradstreet, by

his will, provided for several- legacies, and then devised to his son Nathaniel the reversion of his real estate expectant at the death of his wife, together with all the rest, residue, and remainder of his estate, both real and personal, "on condition that he pay all the above named legacies and bequests according to the true intent and meaning thereof." He made Nathaniel his sole executor. After the death of the widow, Nathaniel entered and held the land until his death. After the death of Nathaniel, his widow and heirs conveyed to the defendant, in fee, with warranty. The plaintiffs were children of Henry, the testator. Daniel Bradstreet, one of the plaintiffs, was a legatee under the will. His legacy had not been paid, nor had it been properly demanded. It was held that the estate was upon a condition subsequent, but that there was no forfeiture, by reason of the non-payment of the legacy, because there had been no demand, and a demand was necessary before a forfeiture.

In *Merrifield* v. *Cobleigh*, 4 Cush. 178, it was held that where a forfeiture of land is claimed by the grantor for breach of a condition subsequent in the performance of which he has no interest, having parted with the estate for the accommodation of which it is created, the terms of the condition are to be construed with great strictness.

The facts of the case were these : The plaintiff had made a deed of a small parcel of land, with a house thereon, reserving to himself the privilege of a bridle road in front of the house, and not to be at any expense in supporting a fence around the land conveyed, and whenever the grantee, his heirs, or assigns should neglect or refuse to support the fence then the deed to be void; and subsequently conveyed the residue to one who removed the fence without replacing it, and conveyed such residue to the grantor, who afterward entered upon the small parcel, claiming a forfeiture thereof for breach of the condition. It was held, that the condition, if not merely personal, being designed to benefit the grantor, as owner of the residue of the lot, attached to such residue, and passed to the grantee thereof, whose removal of the fence

was an extinquishment or waiver of the condition, which being thus determined, could not be revived by the reconveyance. And the reconveyance having been in mortgage, it was held, further, that it was immaterial in this respect, whether the removal of the fence took place before or after the execution of the mortgage. It was held, also, that until reasonable notice given or request made, and neglect or refusal of the grantee to replace the fence, there was no neglect or refusal to support the fence within the terms of the condition.

The following propositions of law were enunciated in *Ludlow* v. *The N. Y., etc., R. R. Co.,* 12 Barb. 440:

The effect of a deed of land, which contains a condition subsequent, is to vest the fee simple of the estate in the grantee, subject to be defeated by his omission to perform the condition.

But the neglect to perform the condition does not, *ipso facto,* determine the estate, but only exposes it to be defeated and determined at the election of the grantor, and (in case of his death) his heirs, to be signified by some act equivalent to a re-entry at common law.

When the estate has, *ipso facto,* ceased, by operation of the condition, it cannot be revived without a new grant, but a voidable estate may be confirmed, and the condition dispensed with.

Conditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates.

Cases of forfeiture are not favored in law, and where the forfeiture is once waived, the court will not assist it.

The case of *Nicoll* v. *The N. Y. & Erie R. R. Co.,* 2 Kern. 121, is much like the last case above cited.

The condition was, that the road should be constructed over the land within the time limited by the charter. It also appeared that the grantor had conveyed the land, so that the plaintiff had become the owner in fee.

PARKER, J., on page 131, says: "A mere failure to perform a condition subsequent does not divest the estate. The

grantor or his heirs may not choose to take advantage of the breach, and until they do so, by entry, or by what is now made by statute its equivalent, there is no forfeiture of the estate."

A court of equity will never lend its aid to divest an estate for the breach of a condition subsequent. 4 Kent Com. 130; *Livingston* v. *Stickles*, 8 Paige, 398.

"A condition, however, defeats the estate to which it is annexed, only at the election of him who has the right to enforce it. Notwithstanding its breach, the estate, if a freehold, can only be defeated by an entry made, and, until that is done, it loses none of its original qualities or incidents." 2 Washb. Real. Prop. 10, 3d ed.

The same learned author, on page 13, says: "But nothing short of an actual entry will serve to defeat an estate upon a condition which has been broken. It cannot be done by action, for when the grantor conveyed his estate he parted with the seizin, which he can only regain by an entry made."

By statute in some of the states, actual entry is dispensed with, and since conveyance by actual seizin is no longer necessary, probably actual entry is no longer necessary here. But notice, by the party entitled to re-enter for condition broken, of his intention to insist upon it, or some act indicating an intention to insist upon it, certainly is necessary to make the person in possession under the grant or devise a trespasser, or subject him to an action.

It was held in *Cross* v. *Carson*, 8 Blackf. 138, that if land be conveyed in fee simple on condition subsequent, and the condition be not performed, the estate may be defeated by the entry of the grantor or his heirs, but until such entry, the grantee or his heirs will hold the land.

It was held in *Thompson* v. *Thompson*, 9 Ind. 323, that an estate upon condition subsequent does not revert until entry for condition broken.

To the same effect is the case of *Boone* v. *Tipton*, 15 Ind. 270. There, the estate was conveyed upon condition that the grantee would support Hannah Brown during her life.

It was held, she waived performance of the condition by refusing to receive aid.

There is a wide and clearly defined distinction between a condition and a conditional limitation. In the case of *Proprietors of the Church in Brattle Square* v. *Grant,* 3 Gray, 142, it is said: "A condition, followed by a limitation over to a third person in case the condition be not fulfilled, or there be a breach of it, is termed a conditional limitation. A condition determines an estate after breach, upon entry or claim by the grantor or his heirs, or the heirs of the devisor. A limitation marks the period which determines the estate, without any act on the part of him who has the next expectant interest. Upon the happening of the prescribed contingency, the estate first limited comes at once to an end, and the subsequent estate arises."

In the above case will be found a full, accurate, and learned discussion of the various distinctions between conditions and conditional limitations.

It does not appear from the record, in the present case, that any demand was made upon the devisee, William Lindsey, to either pay the legacies to his two sisters, or perform the conditions imposed in reference to remaining upon the farm and providing for his mother. Nor does it appear that any act has been performed to determine the estate created by the will. The devise vested in the devisee an estate in fee. There having been no entry for condition broken or anything equivalent to such entry, and there having been no demand and refusal to perform such conditions, such estate remains in the devisee.

It results from what has been said that the appellant is not entitled to partition of such lands, and that the court committed no error in sustaining the demurrer to the reply.

The judgment is affirmed, with costs.