1808
DECEMBER.

Wagner
vs.
M'Donald

WAGNER VS. M'DONALD.

A paper was exhibited for record as the last will of C W, proved to have been signed by him at a time when he was about to leave the state. It was written somewhat in the form of a letter, and stated "If I should not come to you again, my son M sha'l pay," &c. Evidence was given that C W went to Kentucky, and returned, and that he lived for several weeks thereafter—Held, that the paper could not be admitted to record as the last will of C W.

APPEAL from the Orphans Court of *Frederick* county. A paper, purporting to be the will of *Michael Wagner*, written in the *Dutch* language, of which the following is a translation, was exhibited to the orphans court for record by the appellee, who had married *Elizabeth Schreiner*, one of the legatees therein named, viz. "In the name of God, Amen. If I should not come to you again, my son *Michael Wagner* shall pay, out of *Christian Wagner's* bond, which I have from him, to *Elizabeth Schreiner* seventy pounds, and that in the year 1798, the 10th of May; and to *Michael Roether* thirty pounds in the year 1799, the 10th of May. The remaining fifty pounds you shall divide amongst you; that is, *Michael Wagner* and *John Wagner*, and *Christian Wagner* and *Roether's* children, and *Catherine Schreiner's* 3 children, and the money shall be put on interest till they come of age. Farther what I yet have with *Christian*, that is, 1 cow, 1 house clock, bed and bedsteads, clothes press, table, copper kettle, bible, of these *Eve Sherman* shall have share too like the rest. So much from me.

Michael Wagner,

*May* 4th, 1795."

A *citation* was ordered and issued for the representatives of the deceased, &c. Proof was made of the handwriting of *Michael Wagner*, (deceased,) and that he was, in the year 1795, of sound disposing mind, memory and understanding. It was also proved that he lived with *Christian Wagner* in *Liberty* Town, and went to *Kentucky* in the spring, about the 7th or 8th of *May* 1795, and returned to *Christian Wagner's* after harvest in the same year, and said on his return that he was well; that he continued so for four days, and after that he lay sick three weeks, when he died. The orphans court decreed that the paper should be recorded as the last will of *Michael Wagner*, deceased. From this decree this appeal was brought by *Christian Wagner*, who (among others,) had been summoned, but who alone appeared to and contested the proceedings.

The cause was argued before CHASE, Ch. J. BUCHANAN, and NICHOLSON, J.

*Taney*, for the Appellant, contended that the paper ex-hibited was to take effect as a will if the writer did not return; and as he did return, it can have no effect. A will to take effect on a contingency, has none if the contingency does not happen. *Parsons vs. Lanoe*, 1 *Ves.* 190. S. C. *Amb.* 557. *Lugg vs. Lugg*, 2 *Salk.* 592. S. C. 1 *Ld. Raym.* 441.

<div style="text-align:right">

1808
Hay
vs
Conner

</div>

*Shaaff*, for the Appellee, contended, that it did not appear that the appellant had any interest in or right under the will to justify his contesting its being admitted to record, and appealing to this court from the decision of the orphans court. He admitted that the orphans court were wrong in their decision.

<div style="text-align:center">DECREE REVERSED.</div>

---

## Hay, *et al.* vs. Conner.

<div style="text-align:right">DECEMBER.</div>

Appeal from *Baltimore* County Court. The appellants, by their *next friend*, brought an action of *trover* in that court against the appellee, for the conversion of a mulatto male slave called *James Perry*. The general issue was pleaded. The facts are stated in the following opinion of the county court, delivered at the trial in February 1802, by

<div style="float:right; font-size:small; width:30%">Where a mother, as the <i>natural</i> guardian of her infant children, who were under the age of 14 years, hired a slave belonging to them, to a sea captain, to perform a voyage on wages, the slave to be returned, &c. and the vessel being sold at the port to which she sailed, by her owners, the slave was put by the captain on board of another vessel bound home, and furnished with provisions for the voyage, but never returned home In an action of <i>trover</i> by the children, prosecuting by their <i>prochein amy</i>, against the captain, for the value of the slave—<i>Held</i>, that the action was weak brought.</div>

H. RIDGELY, Ch. J. In this case the evidence offered to the jury is, that *John Hay*, deceased, father of the plaintiffs, in his life-time executed a bill of sale to the plaintiffs, who were and still are infants under the age of twenty-one years, by which he sold to them a negro slave by the name of *James Perry*, (who is the slave mentioned in the declaration;) that *John Hay* departed this life intestate, leaving his said infant children in the care and under the protection of their mother, *Martha Hay;* that *Martha Hay* afterwards took upon herself to hire for wages the negro slave, *James Perry*, to the defendant, Captain *Conner*, to perform a voyage from *Baltimore* to *Hamburg*, and thence back to *Baltimore*, as a cook on board the ship *Mary*, which the defendant commanded in the voyage. The slave's name was signed under the ship's articles, in pursuance of the said hiring, as a cook; and that the defendant promised *Martha Hay* that he would bring back the