FANNIE E. MITCHENER v. THOMAS H. ATKINSON and others.

A legacy of $20,000 to the testator's widow,—upon a survey of the whole will and the state of his family and estate at his death,—declared to be a charge upon the whole estate and also upon the yearly produce of the land of his former wife, until the legacy is discharged or her children come of age; and in this latter respect, such children put to an election between their interest under the will, and their intetest as heirs to their mother.

(The former decree in this case modified. See Phil. Eq. 23.)

PETITION to rehear a decree made at June Term 1866 of this Court.

The case is reported in Phil. Eq., 23.

The decree declared that the legacy of $20,000 given to the plaintiff was not chargeable upon the real estate of the testa-tor, and it was upon this point that a rehearing was prayed for.

The important facts in the case were that one Agrippa Mitchener had died in Johnston County in 1860, leaving an estate of some $80,000 in land, slaves and other property. The plaintiff was his second wife. Two children survived him, who were by his first wife. The deceased at the time of his death cultivated two farms: his home place, and a place at Smithfield Station which had been his first wife's maiden land. The former of these was worth some $8,000, and the latter was more valuable; at the former were employed five horses and fourteen good hands, at the latter ten horses and twenty good hands; the slave women and children being divided between the two places in the like proportion.

The parts of the will that are material are:

Item: I leave to my beloved wife, Fannie E. Mitchener, my dwelling house and all my household and kitchen furniture, except such part as may herein be disposed of, with the out-houses, and a sufficiency of cleared land next adjoining for a

NOTE.—This case was decided at the last term, but inadvertently was not then reported.

three horse farm, with free access to all my wood lands for fuel, timber, &c., for and during her natural life or widowhood, with this express condition, that my said wife continue to reside upon the premises as her home. But if my said wife, Fannie E. Mitchener, should choose to marry, or remove her residence from this State, then and in that case my will, wish and desire is, that the furniture and other property thus loaned, shall return to my estate and be kept together for the benefit of my children. In like manner and on the same conditions, I leave unto my beloved wife the following negro slaves, to wit: Buck, Tanner, Debroe, Amy, Caution, Sophronia, Sarah, Wesley, Simon and Eliza; also two mules, my carriage and harness and carriage horses, buggy and harness, twenty head of stock hogs, four milch cows and calves, one yoke of oxen, one year's support for herself and family. I give to my beloved wife, Fannie E. Mitchener, as her own right and property the sum of twenty thousand dollars, to be paid by my executor or the guardian of my children, as the case may be, in eight annual installments, the first to be due twelve months after the date of my death, and to be paid as follows, to wit: One note of hand on Ethaniah M. Secor for the sum of one thousand dollars, and one on the same for five hundred dollars, each of them bearing interest at seven per cent—the balance of said installment to be paid in money at any time when my said wife may desire; the remaining installments to be paid annually thereafter from the proceeds arising from the sales of the produce of my farm.

*      *      *      *      *      *      *

All the rest and residue of my estate, whether real or personal or mixed, I give and bequeath unto my two children, John A. Mitchener and Alice Constantia. Mitchener, to be equally divided between them, share and share alike, including all the personal property herein loaned to my wife, to them and their heirs forever. And I do hereby appoint and earnestly request my trusty friend Thomas H. Atkinson to be guardian for my said children, and that he, the said Thomas H. Atkinson, as such guardian, shall cause my farms to be carried on from year

year, and that my estate in all respects be continued as if I were still living, until my said children arrive at the age of twenty-one years or marry, as the case may be, my intention being not to have my negroes scattered or hired, nor my estate deranged in any respect.

By the results of the war the personalty had been so reduced in value, that the legacy of $20,000 could not be paid unless the land were liable therefor.

*Fowle & Badger* and *Haywood*, for the petitioner.

*Moore, contra,*

PEARSON, C. J.  When this case was before us at June Term 1866, (Phil. Eq. 23,) the plaintiff's counsel took the position that a widow was to be looked upon as a purchaser for valuable consideration, and the legacy of $20,000 was entitled to preference over all other legacies and devises. He rested the case on that position, and supported it by many authorities and very forcible reasonings. Without giving an opinion on the first part of this proposition, the Court held that as the widow took under the will, she was put to her election, and was not allowed also to claim against the will, so as to disappoint the intention of the testator.

The attention of the Court was then turned to the position assumed by the counsel for the defendant, that this was a general pecuniary legacy, *demonstrative* in reference to the fund out of which it was to be paid, and although the first turned out to be inadequate, resort could not be had to any other part of the estate for its payment. The Court held that it was a general pecuniary legacy, with reference to a fund for its payment, and so far demonstrative; yet it was not confined to the fund indicated for its payment in *the first instance,* and must be paid out of the property embraced in the residuary clause.

Having decided these two points, the case was taken to be disposed of, and no attention was given to the question whether the part of the home place not devised to the widow,

was, or was not subject to the payment of the legacy, and the matter is put off by the single expression, "of course this remark does not apply to the real estate."

We find now that there was an intermediate ground between the extreme position taken by the plaintiff's counsel, and that taken by the counsel of the defendant, on the former argument; and we are glad to have an opportunity for its consideration under the petition to rehear.

For the plaintiff, it was contended: This legacy is a charge on all of the home place not covered by the devise to the widow; for after the first instalment, the remaining seven are to be paid annually out of the proceeds arising from the sales of the produce of the farm, and as the legacy can never be discharged in this way, as the proceeds of the sale of such produce will not keep down the interest, the plaintiff is entitled to have the land sold, and applied to the payment of her legacy.

For the defendant, it was contended: The idea of this legacy of $18,000 being a charge on the home place is out of the question, for the whole tract is not worth $8,000, and the notion that the testator intended or expected this large sum to be paid off by the sales of the annual produce of this two-horse farm, is absurd.

We are satisfied that it was not the intention of the testator to have this large amount paid by the proceeds of the sales of the annual produce of his home-place, after cutting off the part allotted to his widow; but looking at the whole will in connection with the condition of the testator's affairs as disclosed by the answer, we think his intention was to charge not only the crops made at the home place, but also the crops made at the "Smithfield Station place," with the payment of this legacy to his widow. There was nothing absurd in this. On the contrary, it was a very reasonable expectation, and an arrangement which would have been for the interest of his children, except for the happening of an unforeseen event, to-wit: the war and the emancipation of his slaves. He was worth some sixty or eighty thousand dollars, owned upwards of one hundred slaves, worked at his home

place five horses, and at the " Smithfield Station place," ten horses. In concluding his will, he gives " all the rest and residue of his estate to his two children, appoints Thos. Atkinson their guardian, and directs him " to cause my farms to be carried on from year to year, and my estate in all respects to be continued, as if I were still living, until my children arrive at the age of twenty-one or marry; my intention being not to have my negroes scattered or hired, nor my estate deranged in any respect." In a former part of the will he had given his wife a part of the home place, including the dwelling house, furniture, &c., and $20,000, to be paid by his executor, or the guardian of his children, in eight annual installments. For the first, due twelve months after his death, he makes provision: " the other seven installments to be paid annually from the proceeds arising from the sales of the produce of my farm."

In the "Smithfield Station" farm he had only a life interest as tenant by the courtesy, and it belonged after his death to his children; but connecting the residuary clause with the clause giving the $20,000 to his wife, the intention is obvious. If not moved by affection, he was obliged to give his wife, who was not the mother of his children, this large legacy, a child's part of his estate, to prevent a dissent, and to effect his purpose " not to have the negroes scattered or hired, nor his estate deranged in any respect;" and the arrangement he made for its payment by installments, was a very reasonable one. Let the guardian of my children work the farms as I have been doing from year to year: by the time my eldest child comes of age this legacy can easily be paid off by the crops, and the children will then have all of my negroes to work their mother's land.

Assuming, then, that the testator charged the crops made at the "Smithfield Station place," as well as the crops made at the home place, with the payment of this legacy, the case presents a question of election. The children cannot in conscience take anything under their father's will, if they refuse

to allow the rents and profits of their Smithfield Station plantation to be annually applied to the discharge of this legacy, for if so, they disappoint their father's intention. They cannot claim under the will and also against it. If they elect to claim against the will, the plaintiff is entitled to a decree for the sale of so much of the home place as is not devised to her, and also all of the personal property not given to her absolutely or bequeathed to the children, to be applied to the payment of her legacy: and also to an account of the services of the slaves up to the time of their emancipation, and of the horses, stock, farming utensils, &c., handed over to the guardian, by the executor, and of the rents and profits of the home place. If they elect to claim under the will, they must account for the profits, to-wit: the use of the land and the slaves on the farm at Smithfield Station, and also the remnant of the farm at the home place, up to the emancipation of the slaves; and after that date, the plaintiff will be entitled to the rents of the land until her legacy is satisfied, or the children arrive at age, and the question as to a sale of the home place will stand on further directions. To enable them to make their election with a full understanding of the facts, the defendants are entitled to a reference.

The former decree is reversed so far as it is not consistent with the opinion now declared by the Court. The cause will stand for further directions.

PER CURIAM.                                    Order accordingly.