Castor v. Jones et al.

No. 9412.

CASTOR v. JONES ET AL.

WILLS.—*Construction.— Widow.—Annuity.—Contract.*—The substance of a writing in the form of a will was, that the testator gave to a son-in-law certain personal property and a farm, to be held during the life of the testator and wife, and after their deaths the devisee to pay all taxes, take care of the testator and wife while they lived, pay their funeral expenses, take care of a daughter while she remained unmarried, and "pay me $250 by the first of January in each year, * * during the natural lifetime of myself and wife," with interest after maturity, and to live on the farm with the testator while the latter and his wife lived; and the devisee accepted the provisions of the will, taking possession, etc.

*Held*, that the instrument, though having some elements of a contract, yet was a will, inasmuch as it was a testamentary disposition of property.

*Held*, also, that, upon the death of the testator, his widow became entitled to an annuity of $250, which was a charge on the land devised.

From the Montgomery Circuit Court.

*G. D. Hurley, B. Crane* and *A. B. Anderson,* for appellant.

*A. Thomson, T. H. Ristine, B. T. Ristine, P. S. Kennedy* and *W. T. Brush,* for appellees.

ELLIOTT, J.—The appellant claims that under the will of her deceased husband, Isaac Castor, she is entitled to an annuity of $250, and that it is a charge upon the real estate devised to Daniel Rhodes. The circuit court decided against her, and she prosecutes this appeal.

The provisions of Isaac Castor's will which materially affect the case are these: "1st. I give and bequeath to my son-in-law, Daniel Rhodes, all of my personal property now on the farm where I reside, with the exception of one black mare and three milk cows, for to have and to hold for and in consideration hereinafter mentioned. 2d. I give and bequeath the farm where I now live to the said Daniel Rhodes, described as follows, to wit: The east half of the northeast quarter of section 30, township 19 north, of range 3 west, for to have and hold and have full use of in every way during

VOL. 86.—19

the natural life of myself and wife, Amy Castor, said Rhodes
for to pay the tax on said property, both real and personal,
according to law, and bring me the receipts for the same
yearly; for and in consideration of the above, said Rhodes is
to take care of me and of my wife Amy during our natural
lifetime, and be at all expense every way in doctoring and
funeral expenses; said Rhodes is to take care of my daughter
Indiana so long as she remains single, and she is for to have
two good beds and bedding that she now has; said Rhodes is
for to pay me $250 by the first of January in each year, com-
mencing January, 1875, during the natural lifetime of myself
and wife; if said money is not paid at the time, for to draw
ten per cent. interest; said Rhodes to have full and free pos-
session of said property during the natural lifetime of myself
and wife. 3d. Said Daniel Rhodes for to have all my prop-
erty, both real and personal, at the death of myself and wife."
Following these provisions, which we have copied literally,
are items making small bequests to various kinsmen, and re-
quiring Rhodes to pay them. The will closes with this par-
agraph: "Said Rhodes for to live on said farm and in said
house with me; for to comply with said will during the nat-
ural lifetime of myself and said wife; for to have all notes,
money and effects belonging to me at the death of myself and
wife; if said Rhodes leases said farm this for to be null and
void." The complaint alleges that Rhodes accepted the pro-
visions of the instrument and is in absolute possession of the
property devised to him, and that the validity of the will was
judicially declared by the Montgomery Circuit Court, in a
cause wherein the appellees were plaintiffs and Daniel Rhodes
was defendant.

It is true, as appellees contend, that the instrument has
many of the elements of a contract, but the intention of its
author to make it a testamentary disposition is nevertheless
clearly apparent. No matter what may be the form of the in-
strument, if the intention to make such a disposition of its
author's estate is disclosed, it will be treated as his will. Thus.

a will may be expressed in letters. *Wagner* v. *McDonald,* 2 Har. & J. 346; *Morrell* v. *Dickey,* 1 Johns. Ch. 153. Or in an instrument in form a power of attorney. *Rose* v. *Quick,* 30 Pa. St. 225. So in the form of a deed. *Turner* v. *Scott,* 51 Pa. St. 126; *Miller* v. *Holt,* 1 Am. Prob. Cases, 199; *Carlton* v. *Cameron,* 38 Am. R. 620. So, too, it may be in form and in some substantial respects a contract. *Green* v. *Froud,* 3 Keble, 310; *Hixon* v. *Wytham,* Ch. Cases, 248. There can be no doubt as to the character of the instrument, it is in form a will, it professes to be a will, and its principal provisions are those of a will. This court has passed upon the character of this instrument, and declared it to be a will. *Jones* v. *Rhoads,* 74 Ind. 510.

The character of the instrument being certain, the work of the court is to ascertain its meaning. As the books put it, " the intention of the testator is the polestar," and the instrument is to be so construed as to carry that into effect. All the provisions of the will are to be taken into consideration, and isolated expressions are not to control the general tenor of the instrument.

The draftsman of the will of Isaac Castor was, it is evident, not an educated person. His lack of knowledge of matters of law, his defective command of words, and his confused jumbling together of discordant things, have clouded, but not obscured, the intention of the testator. The desire of Isaac Castor to provide for his wife is strongly and clearly expressed in all the provisions of the will. It appears in every clause in which a burden is imposed upon the devisee. Wherever anything of benefit is provided for, it is for the joint benefit of the testator and his wife. In not a single instance throughout the entire will is there a severance, unless the clause " pay me " shall be deemed to create it as to the annuity of $250, here the subject of dispute. Is it not reasonable to presume that a husband who, with such solicitous care, had united his wife's name with his from the beginning to the end of the will, meant to secure for her the small annuity provided? Is it

just to presume that, having made all the beneficial provisions of the will apply to both of them, he here reserved the annuity to himself alone?

Clauses in a will are to be construed by the aid of clauses or words with which they are grouped. The clause providing for the annuity is grouped with provision for the care of the wife during her lifetime, and after the testator's death, with a clause providing for the care of the testator's daughter, and with other clauses of a strictly and purely testamentary character. The just construction, therefore, is that this clause, too, was meant to operate for the benefit of the wife after the testator's death. It would violate a just rule of construction to wrench the clause providing for the annuity from its associate clauses and give it a meaning peculiar to itself, and at variance with its connectives.

The language of the particular clause under discussion is: "Said Rhodes is for to pay me $250, by the first of January in each year, commencing January, 1875, during the natural lifetime of myself and wife." There is here a time fixed for the commencement of the payment of the annuity, and that is during the testator's lifetime, and this may not be, in strictness, a testamentary disposition; but it by no means follows that it vitiates that part of the clause which is such a disposition. The provision for the payment, during the lifetime of the wife, is certainly as clearly of a testamentary character as any other part of the instrument. The time of payment commences before, but continues after, the testator's death.

Considered under strict legal rules, the clause secures the annuity to the wife if she survives the husband. The rule is, that an obligation or duty to pay an annuity to husband and wife during their lives secures the annuity to the survivor, although there are no express words creating a right of survivorship. *Douglas* v. *Parsons*, 22 Ohio St. 526; *Merrill* v. *Bickford*, 65 Me. 118. This rule here harmonizes with the intention of the testator, as manifested in the great

body of the provisions of his will, and ought not to be broken in upon because of the ignorance or unskilfulness of the draftsman of the will.

Faulty expressions and inaccurate words can not be permitted to defeat a testator's intention, if there be enough to disclose it; nor will detached clauses be allowed to thwart it, if it can be discovered from all the provisions taken together. The general intent, not particular phrases, controls, and this intent overrides all merely special or particular expressions. 1 Redf. Wills, 433. As some of the cases say, the intent is to be gathered "from all the four corners of the instrument." Every substantive provision of this will expresses the testator's desire to secure its benefits, one and all, to his wife, and, when combined, these provisions leave no uncertainty as to the intention of the testator. The last clause of the will strongly and plainly exhibits the purpose to make sure that during his wife's lifetime she shall enjoy all the benefits of the provisions of the will. It is there written, quaintly enough, "Said Rhodes for to comply with the said will during the lifetime of myself and wife." This provision extends to all, not merely part, of the testamentary clauses of the will. It includes that concerning the annuity as well as every other. We can perceive no reason for severing this provision from those with which it is associated, or for declaring it to be without the broad, sweeping conclusion of the will. There is nothing in the instrument except the words "pay me," which supplies the appearance of reason for excluding from this concluding clause the provisions creating the annuity, and the whole tenor of the instrument, as well as the language with which the expression is directly and immediately connected, shows that the testator meant that the annuity should be continued throughout the lifetime of his wife.

Where legacies are charged upon land, says Mr. Jarman, "annuities will generally be included, unless the testator manifests an intention to distinguish them." 3 Jarman Wills, 434. In this case, however, there can be no doubt upon this ques-

tion, for the annuity is bound up with all the legacies of the will, and it is impossible to conceive a charge as existing in favor of some of the beneficiaries and not all. Under the rule acted upon in *Parks* v. *Perry*, 2 Blackf. 74, the widow, in case of a struggle for priority, would be preferred. We have, however, no such question here, for it is not insisted that there is a priority of right, but that an annuity is not within the rule charging legacies upon land. To the authority already referred to, we add *Mitchener* v. *Atkinson*, 63 N. C. 585; *Morgan* v. *Titus*, 2 Green Ch. 201. The annuity is in truth a legacy. The form in which it is given does not change its legal force.

*Lindsey* v. *Lindsey*, 45 Ind. 552, decides that legacies given in the manner those are here bestowed are charges upon the real estate specifically devised to and accepted by the principal devisee. In that case the court cite many cases sustaining this doctrine, and quote as expressing the rule correctly the following from Willard Eq. 489: "But where the real estate is devised to the person who by the will is directed to pay the legacy, it has frequently been decided that such legacy is an equitable charge upon the real estate so devised, although the devisee is also the executor, or is the residuary legatee of the personal estate; unless there is something in the will itself to indicate a contrary intention on the part of the testator." Judge STORY states the rule in even broader terms. 1 Story Eq. 566. In *Harris* v. *Fly*, 7 Paige, 421, the court said: "The testator does not in terms create an equitable charge upon the devised premises for the payment of the two legacies to the daughters. But that was not necessary; as the charge of a legacy upon the real estate of the testator, either in aid of or in exoneration of the personalty, may be and frequently is created by implication merely. * * * But where the real estate is devised to the person who by the will is directed to pay the legacy, it has frequently been decided that such legacy is an equitable charge upon the real estate so devised." In the fifth American edition of Jarman on Wills, the editors

have collected many cases declaring and illustrating this doc-trine. 3 Jarman Wills, 402 n. Cases decided since *Lindsey* v. *Lindsey, supra,* declare and enforce the principle there laid down. *Wilson* v. *Piper,* 77 Ind. 437; *Bennett* v: *Gaddis,* 79 Ind. 347.

The court erred in sustaining the demurrer to the second paragraph of the complaint, and the judgment must be re-versed.

WORDEN and WOODS, JJ., dissent.

Opinion filed at the May Term, 1882.
Petition for a rehearing overruled at the November Term, 1882.