Filed June 13, 1888.

---◆---

No. 14,297.

## COMMONS v. COMMONS.

WILL.— *Widow.—Devise of a Living from Land.—Charge Upon Land.—Personal Liability of Devisees.—Statute of Limitations.*—A testator gave to his
three sons certain real estate, in fee simple.   Another clause of the will
provided that, after the sons became twenty-one years old, the testator's
wife, if she remained a widow, should "be entitled to a living off my
said land until she shall marry, and if she shall not marry, then until
her death."

*Held,* that the widow's living is made a charge upon the land, but that it
is recoverable from the rents and profits and not from the devisees
personally.

*Held,* also, that the devisees, by accepting the land, impliedly agreed to
account to the widow for such portion of the rents and profits as would
amount to her living, if the land yielded so much, regardless of any
other means of a living which she might have.

*Held,* also, that the widow is given a life-estate in the land, to the extent

of a living at least, upon the condition that she remain unmarried. ELLIOTT, J., dissents from this conclusion.

*Held*, also, that a subsequent clause of the will authorizing the executors, with the widow's consent, to sell the land during the minority of the sons, for their benefit, did not overthrow her rights as previously fixed; nor did a partition of the land among the sons affect her rights.

*Held*, also, that the devise to the widow was not a conditional one, depending upon all the sons reaching the age of twenty-one years. That period merely fixed the time when her right to a living from the land, as against the devisees, should commence; and for such portion of the rents and profits accruing after that time as would be a living, she may recover from the devisees, except in so far as her cause of action is barred by the six year's statute of limitations.

From the Rush Circuit Court.

*W. A. Cullen*, for appellant.

*J. B. Julian* and *J. F. Julian*, for appellee.

ZOLLARS, J.—On the 27th day of July, 1831, Ezekiel Commons executed his will, which, so far as is material here, is as follows:

"*First.* It is my will that all my just debts and funeral expenses be first paid out of my personal estate.

"*Second.* I give and bequeath to my three sons, Jesse, John and Isaac D. Commons, the following described tract of land, being the south half of section numbered 9, township 15 north, of range 9 east, lying and being in Rush county, Indiana, to be equally divided amongst them according to quality and value.

"*Third.* It is my will that my three sons, Jesse, John and Isaac, in consideration of their receiving said land, do give to each of my three daughters, Eleanor, Lydia and Elbina Commons, one horse beast of the value of $50 when my said sons shall have arrived at the age of twenty-one years.

"*Fourth.* I give and bequeath to my beloved wife, Sarah, all my personal estate, farming utensils, household and kitchen furniture, and all debts that are due to me, after the payment of my just debts and funeral expenses, for her sole use and disposal during her natural life.

" *Sixth.* It is my will that after my said sons shall have arrived to the age of twenty-one years, respectively, if my said wife shall remain a widow, she shall be entitled to a living off my said land until she shall marry, and if she shall not marry, then until her death.

" *Seventh.* It is my will that if at any time during the minority of my said sons, my executors hereinafter named, with the consent of my said wife, may deem it best for the interest of my said sons, they may sell and convey my said land for the best price they can obtain for it, dividing the money equally amongst them, or invest the money again in other lands more for the benefit of my said sons."

The testator died in October, 1831, leaving appellee his widow, and the children named in the will surviving. Prior to the making of the will, he had purchased from one Hayworth three hundred and twenty acres of land, and had paid him for it, but had not received a deed therefor. The will was properly probated, and appellee, electing to take under its provisions, received the personal property mentioned therein. At the time of the testator's death, the sons named in the second item of the will were respectively of the ages of fourteen, six and two years, appellant being the older. In the fall of 1831, appellee moved upon the land described in the will, and so purchased from Hayworth by the testator, and continued to live thereon with her children until the land was partitioned. In 1834, Hayworth conveyed the land to the three sons by a deed with covenants of warranty, and without reservation, which deed was properly recorded. By a decree of the circuit court, the land was partitioned prior to 1849. Eighty-seven acres were set off to appellant as his share, and the balance of the three hundred and twenty acres was set off to the other two sons, John and Isaac. Appellant thereupon took possession of the land set off to him. Appellee retained possession of the land so set off to John and Isaac, they living with her. They thus lived together until 1849, when Isaac died intestate, being yet a

minor. After his death, appellant, his mother, and his brothers and his sisters, made an amicable partition of his interest in the land, and fifty-five acres were set off to appellee. She took and held possession of the land thus set off to her until 1863, when she sold and conveyed it to appellant by a warranty deed, in consideration of $1,200, which he paid to her. Upon the sale and conveyance to him, he took possession of the land, and still retains it, and has made valuable and lasting improvements thereon. Appellee, however, with his consent, occupied the house upon the land until 1871, when she quit housekeeping and moved from the land. For about nine years subsequently she lived with her children, dividing her time among them; at times paying something for her board, and at other times paying nothing but her work.

The partitions above mentioned were made with appellee's knowledge and consent. From the time appellant became twenty-one years of age until within a few years past, he and appellee had frequent conversations, in which he recognized her right to a living from the land under the terms of the will, but she neither received nor demanded anything from him, nor from the land. She never personally made any demand upon him for an accounting, nor was any such demand ever made by her upon either of the other sons, both of whom are now dead; but, on the 15th day of June, 1886, her attorney made a demand upon appellant for an accounting. For the last eight years appellee has lived with a daughter and her husband. When she went to live with them she had $900, the proceeds of the sale of the fifty-five acres of land to appellant, and afterwards received from other sources about $225, all of which has been received by her son-in-law and applied to her support. She was ninety-two years old in 1886. For five years prior to the trial she was quite feeble, and almost blind and helpless. During that five years it was worth seven dollars per week to board, attend to, and care for her. For three years prior thereto such

board and care were worth four dollars per week, and for nine years prior to that her board and care were worth two dollars per week.

Upon the foregoing facts, which are, substantially, the facts specially found by the court below, that court found as conclusions of law that appellant and his brothers took the land charged with a living for appellee, their mother; that she is entitled to recover from appellant the one-third of such living during the six years preceding the commencement of the action, and fixed that amount at six hundred and seventy-six dollars. A personal judgment was rendered against appellant accordingly.

Appellee's counsel contend, in the first place, that she should have been allowed an amount equal to a living from the time that the sons became, or would have become, of age, had they all lived; and, in the second place, that if the six years' limitation is to be applied, the amount of the judgment is too small.

On the other hand, counsel for appellant contends, in the first place, that the will neither created a charge upon the land, nor a personal liability against the sons for appellee's living; and, in the second place, that if it did, she could not be entitled to a personal judgment without a demand, and that upon such demand she could only recover for the future, and not for the past.

The first question in the natural order is the scope and effect of the will. To ascertain and carry into effect the intention of the testator is a cardinal rule in the construction of wills. It is also settled, that, generally speaking, the intention must be gathered from the language of the will itself. *Millett* v. *Ford*, 109 Ind. 159; *Pugh* v. *Pugh*, 105 Ind. 552; *Downie* v. *Buennagel*, 94 Ind. 228; *Becker* v. *Becker*, 96 Ind. 154.

And, as said in the case of *Castor* v. *Jones*, 86 Ind. 289 (293), "Faulty expressions and inaccurate words can not be permitted to defeat a testator's intention, if there be enough

to disclose it; nor will detached clauses be allowed to thwart it, if it can be discovered from all the provisions taken together. The general intent, not particular phrases, controls, and this intent overrides all merely special or particular expressions. * * As some of the cases say, the intent is to be gathered 'from all the four corners of the instrument.'"

In the case before us, it is evident that the testator intended that, by the terms of the will, the three sons should become the owners of the land in fee simple. The will, therefore, should be so construed as to give effect to that intention. And in order to ascertain the rights of the several parties, the clauses of the will which clothed the sons with the fee must be construed in connection with the other clauses which fix the rights of appellee as the widow. The sixth clause very clearly secures to her a living from the land. In the absence of a will, she, as the surviving widow, and as against the children, would have been entitled to one-third of the land. Manifestly, the testator did not intend to deprive her of that right, and leave her with no means of support from the land.

What his intentions were as to the rents and profits of the land between the time of his death and the arrival of his sons at the age of twenty-one years, is left a matter of conjecture. The probability is, that he intended that the land should be used by the widow, as she seems to have used it, in the rearing of the family. However that may be, it is not material here. The evident intention of the testator was, that the mother and widow should not be left without the means of support after his sons should attain the age of twenty-one years, and hence he inserted the sixth clause of the will, that, commencing with the time when they should reach that age, she should have a living from the land. That clause can not be construed as an indication merely of that which he thought would be a reasonable exercise of discretion on the part of the sons, leaving them to exercise their own discretion.

The sixth clause, we think, not only made her living a charge upon the land, but also gave her an interest in the land, in the way of a life-estate, to the extent of a living at least, conditioned only upon her remaining unmarried. See *Colby* v. *Colby*, 28 Vt. 10; *Lindsey* v. *Lindsey*, 45 Ind. 552; *Anderson* v. *Crist*, 113 Ind. 65 (12 West. Rep. 641, and note); *Springer's Appeal*, 111 Pa. St. 274; *Castor* v. *Jones*, *supra*; *Phillips* v. *Clark*, 6 Cent. R. 171; *Thompson* v. *Schenck*, 16 Ind. 194; *Nash* v. *Taylor*, 83 Ind. 347.

The seventh clause of the will authorizes a sale of the land during the minority of the sons, with the consent of appellee, the widow and mother. It is clear that the land could not have been sold under that clause without her consent, whatever might have been the effect upon her rights had such a sale been made. Construing that clause in connection with other portions of the will, it should not be held that it overthrows and destroys the widow's rights as given by the sixth clause. On the other hand, it should be treated, we think, as a recognition of the fact that she had rights of which she could not be deprived without her consent.

The devise to the widow was not, as contended by counsel, a conditional one, dependent upon all of the sons living to the age of twenty-one years. That period was fixed merely as the time when, and subsequent to which, she should have a right to a living from the land as against the devisees. *Cann* v. *Fidler*, 62 Ind. 116.

As we have seen, the land was partitioned amongst the sons. That partition, however, did not overthrow appellee's interest in the land, or her right to a living from it. She was not a party to the proceeding, nor was the title to the land in any way affected thereby. Interests were thereby severed, but no new titles were created, nor liens or charges destroyed. *Nash* v. *Taylor*, *supra*.

By the death of one of the sons, appellee became the owner of a portion of his interest in the land set off to him and his brother, but we are unable to see how that could re-

lieve the balance of the land from the charge upon it for its proportionate share of her living.

Having determined that appellee has, by the terms of the will, an interest in the land, and that a living for her from the land is made a charge upon it, the next question is as to the personal liability of the sons to whom the land was devised. In many cases may be found the general statement that a devisee, who has accepted real estate devised to him, is personally liable for the payment of debts and legacies, or for the furnishing of support charged thereon. The only substantial and proper ground upon which a personal liability can be based is, that by accepting the real estate devised the devisee impliedly agrees to do what the testator either expressly or by a fair implication charged upon him as a personal duty, in respect to, or in consideration of, the land so devised. It was said by WALWORTH, Chancellor, in the case of *Spraker* v. *Van Alstyne,* 18 Wend. 200, that " the meaning of the expression, ' a charge upon the person in respect to the lands devised,' is that the devisee is directed to pay the debts or legacies personally, or to relinquish some other right, for the reason or because the testator has made the devise to him ; so that if the devisee accept the devise, he impliedly assumes to pay the charge, or submit to the loss."

The proper rule in each case is to ascertain from the terms of the will what, if anything, the testator intended the devisee should do in the way of paying debts and legacies, or furnishing support, etc., and then to hold that by accepting the real estate devised, the devisee impliedly agrees to perform the duties, whatever they may be, which the testator intended to impose. In other words, the testator dictates the terms and conditions, and the devisee, by accepting the real estate devised, impliedly agrees to comply with those terms and conditions. He can not accept and hold the real estate devised and refuse to comply with the terms and conditions which accompany the devise.

In many of the cases where the devisee has been held personally liable for the payment of debts or legacies, or for the failure to furnish support, etc., such duties were, in express terms, charged upon him personally. In others, the payment of such debts and legacies, or the furnishing of such support, was so charged upon the real estate as to show that the testator intended to impose a personal liability or duty, or to make the performance of such duty a condition of, or consideration for, the land devised. Of the first class of cases are the following: *Lindsey* v. *Lindsey, supra; Castor* v. *Jones, supra; Wilson* v. *Moore,* 86 Ind. 244; *Merritt* v. *Bucknam,* 78 Maine, 504; *Gridley* v. *Gridley,* 24 N. Y. 130; *McLachlan* v. *McLachlan,* 9 Paige, 534; *Dodge* v. *Manning,* 1 N. Y. 298; *Tole* v. *Hardy,* 6 Cow. 333; *Mahar* v. *O'Hara,* 4 Gilm. (Ill.) 424.

Of the second class are the following: *Cann* v. *Fidler, supra; Lofton* v. *Moore,* 83 Ind. 112; *Elwood* v. *Deifendorf,* 5 Barb. 398; *Larkin* v. *Mann,* 53 Barb. 267.

In support of our conclusion above, see *Bennett* v. *Gaddis,* 79 Ind. 347; 2 Perry Trusts, section 576.

In the case before us the will does not, in express terms, charge the devisees with the duty of furnishing to appellee a living, nor is her living made a charge upon the land in such a manner as to show, or indicate, that the testator intended that the devisees should furnish such a living. She has been, and still is, entitled to a living from the land devised, and for that living she must look to the rents and profits of the land, and not to the devisees personally. If they were personally liable for her living, they would be liable whether the rents and profits of the land would produce such a living or not. *McLachlan* v. *McLachlan, supra; Brown* v. *Knapp,* 79 N. Y. 136; *Tole* v. *Hardy, supra.* It is very evident that the testator did not intend that they should be thus liable.

From the time when the sons would have attained the age of twenty-one years, had they all lived, appellee has been

entitled to such portion of the rents and profits of the land as would have furnished her a living; and, since the partition of the land, she has been entitled to the just proportion of that living from the rents and profits of the land held and owned by appellant. The land which he purchased from her was freed from the charge by her sale and conveyance to him, by a deed containing covenants of warranty. He is liable to her, not because he has been, or is now, personally bound to furnish her a living, or to personally contribute thereto, but because he has had the use of the land and received the rents and profits thereof. If he owns and has had the use of one-third of the land devised, as seems to be conceded by counsel on both sides, he is liable to her for one-third of an amount sufficient to have furnished her a living for six years prior to the commencement of this action, provided the rental value of his portion of the land amounted to that much. She was entitled to a portion of the rents of the land which he has received by the use of it, but he in no sense holds the amount as a trustee, and hence the six years' limitation applies. The case was commenced, tried and decided below upon the theory that appellant by the terms of the will was made personally liable for a proportionate share of appellee's living. As we have seen, that theory is not correct. There was no finding as to the rental value of the land, and, presumably, no evidence upon that question. Without such evidence it is impossible to fix the amount which appellee is entitled to recover.

The judgment is reversed, at appellee's costs, with instructions to the court below to grant a new trial, to grant leave to appellee to amend her complaint, and to proceed with the case in accordance with this opinion.

ELLIOTT, J.—I dissent from the proposition that the will devises a life estate in the land to the appellee.

Filed April 25, 1888.

ON PETITION FOR A REHEARING.

ZOLLARS, J.—It will certainly not be difficult to discover the difference between a holding that appellant was not personally liable under and by force of the terms of the will for his mother's living, which, as stated in the principal opinion, would make him liable regardless of the rents and profits of the land, and a holding which makes him personally liable by reason of having occupied a portion of the land, and received the rents and profits thereof.

Under the will appellee was, and is, entitled to a living from the land.

The special finding of facts shows that appellant, while occupying a portion of the land and receiving the rents and profits, recognized that right. He, certainly, can not complain that she claimed nothing from him on account of the rents and profits until recently. Nor can it be of any consequence, as affecting her rights, that during many years she was able or managed to live without looking to the land. She would have been entitled to a living from the land although she might have received a fortune from other sources subsequent to the death of the testator. The will unconditionally gave to her a right to a living from the land. That right was not made dependent upon the condition that she might be able to live without looking to the land, nor upon any other condition. Having a right to a living from the land, appellee might each year have demanded from appellant, who occupied one-third of it, to turn over to her an amount equal to one-third of the amount necessary for her living, provided the rental value of the land so occupied amounted to that much. That she was entitled to a living from the land he was bound to know without any notice from her. The will which lodged the fee in him was notice to him that his mother was entitled to a living from the land. The special finding, however, as we have seen, shows that he had actual knowledge of her rights, and recognized those rights in frequent conversations with her. He has occupied the

Commons *v.* Commons.

land and received the rents and profits with the knowledge, both constructive and actual, of her rights.

The law raised an implied promise on his part to account to her for such an amount of the rents and profits of the land so occupied as would amount to one-third of her living, if the rental value of the land amounted to that much. To that extent he became indebted to her by reason of his occupancy and use of the land. *Betts* v. *Quick*, 114 Ind. 165.

We can think of no statute, except the six years' statute of limitations, which will bar an action for that indebtedness, and that statute, we think, applies. Suppose, for example, that during the six years immediately preceding the bringing of the action, appellee had gone in debt to some one for her living, or had borrowed money on which to live, could it be said that because she had not, each year, or at the beginning of those six years, made a demand upon appellant she could recover nothing from him with which to pay for her living, or to repay the money upon which she lived?

By failing to require appellant to account as above indicated, appellee, by reason of the statute of limitations, is limited in her right of recovery to the six years preceding the commencement of her action, but to hold that she can not recover for those years would be to destroy, in a measure, the provisions made for her by the testator.

Complaint is made that we did not, in the principal opinion, decide upon what basis the rental value of the land occupied by appellant should be estimated; as, for example, what account, if any, should be taken of the improvements which appellant may have put upon the land by way of clearing, fertilizing and otherwise, if any, which may have increased the rental value. We did not go into that question, and must decline to do so now, for the reason that the record does not so present it as to make a decision necessary or proper.

Petition for a rehearing overruled.

Filed June 13, 1888.