84 P.2d 592

**TORRES v. ABEYTA et al.**

No. 4404.

Supreme Court of New Mexico.

Nov. 18, 1938.

Robert Hoath LaFollette, of Albuquerque, for appellant.

Garnett R. Burks and James C. Enloe, both of Socorro, for appellee Lola Zimmerly de Abeyta.

BICKLEY, Justice.

This case involves the construction of a will, the material portions of which are as follows:

"Second. I give, devise and bequeath unto my beloved cousin, Lola Zimmerly de Abeyta my dwelling house on Eaton Avenue situated on tract No. 1 Survey No. 347 in the City of Socorro, New Mexico, including all the furniture in said dwelling house. I also give, devise and bequeath to my said beloved cousin Lola Zimmerly de Abeyta the building used as the Plaza Cafe and the two story building called the hotel adjoining the Plaza Cafe, together with the lot on which said building stands, and fifty feet more of ground towards the east from the east walls of said building said lots and buildings being situated on the northwest corner of the Survey No. 365 of the City of Socorro, New Mexico."

"Fifth. All the rest, residue and remainder of my estate, real personal and mixed, monies and effects, of which I may die seized or possess, or which I may be entitled to at the time of my decease, I give, devise and bequeath to my beloved relatives Teresita Zimmerly de Miera, Lola Zimmerly de Abeyta, Herminio Torres and Max G. Torres, to be divided equally among them share and share alike by my executor, to have and to hold the same to them absolutely and forever.

"Sixth. The separate bequest given to my said cousin Lola Zimmerly de Abeyta is given to her so she can, out of the income derived from the Cafe Building and hotel building, provide for and care for and maintain my beloved husband A. C. Abeytia during his life and to see that he has everything he needs, and so she can provide for him a home in the dwelling

house. I hereby charge my said executor with the duty to see that these instructions are observed and carried out to the letter."

The action was commenced by plaintiff (appellant) for the purpose of establishing a trust in favor of himself and the other beneficiaries mentioned in the residuary clause.

Appellant relies upon two points for reversal of the judgment of the district court as follows:

"1. Under the last will and testament of Tomasa Garcia de Abeytia, a trust was created in favor of her husband, A. C. Abeytia."

"2. The, trust created by the will of Tomasa Garcia de Abeytia in favor of her husband, A. C. Abeytia, failed by reason of the death of said husband, A. C. Abeytia, before the death of the testatrix, and a resulting trust arose by operation of law in favor of Herminio Torres and the other residuary legatees and devisees named in said will."

■ We must determine whether the wording of the will shows an intention to create an express trust or an equitable charge. In the case of an unenforceable express trust the legatee Lola Zimmerly de Abeyta would normally hold as constructive trustee for the heirs of the testatrix, while in the case of the equitable charge she would hold for herself if the charge is unenforceable.

The next question is whether or not a trust was created by the terms of the will. It is conceded that a decision of this question involves inquiry as to whether the words employed are merely precatory words and if they are whether they are strong enough to disclose an imperative command of the testatrix which will control or limit the use of the property devised to Lola Zimmerly de Abeyta.

■ Some general observations upon precatory trusts will be helpful.

"The current of the decisions, both in England and the United States, indubitably shows that precatory trusts are not favored, nor is their extension to be encouraged by the courts." 2 Underhill on Wills, secs. 794, 796.

In Pomeroy's Equity Jurisprudence (4th Ed) we find the following:

"§ 1014. 4. Precatory Words.—The most common and important species of trusts by inference are those which arise where a testator has given property to a devisee or legatee, and has accompanied his gift with *precatory* words or phrases, implying his desire or wish that the property should be used for the benefit of some designated person or persons, or should be applied to some designated purpose. Words expressing direction, recommendation, entreaty, confidence, hope, expectation, desire, wish, request, and the like, are included under the denomination 'precatory.' As a most general statement of the rule, if such words are strong enough to

indicate the intention, and this intention is not defeated by other provisions of the will, the court infers that the property was given on trust for the person or object indicated, and will enforce such trust, according to its nature, as a similar trust declared in express terms would be enforced.

"§ 1015. Modern Tendency to Restrict the Doctrine.—I shall not attempt any analysis and classification of the cases for the purpose of formulating more specific rules. This has been done, as far as practicable, in the various treatises upon trusts. The decisions are numerous and conflicting. Judges have for some time past shown a decided leaning against the doctrine of precatory trusts, and a strong tendency to restrict its operation within reasonable and somewhat narrow bounds; many of the earlier decisions would certainly not be followed at the present day. The courts of this country have generally adopted the doctrine substantially as settled in England, although perhaps with some caution and reserve, and they all exhibit the modern tendency to limit rather than enlarge its scope; while in a few of the states the doctrine has been accepted with great reluctance, and only to a partial extent and in a modified form.

"§ 1016. What Intention Necessary— The General Criterion.—Whether or not a trust has been created in any particular case is entirely a question of interpretation and construction. The intention must be sought for not only in the precatory words themselves, but also in the terms and qualifications of the gift, the powers of disposition or enjoyment conferred upon the first taker, the nature of the property, the description of the supposed beneficiaries, and all the other context. Precatory words may be used which, standing alone, would, under the decisions, create a trust; but they may be qualified and controlled by other expressions showing that the gift is absolute, and that everything is left to the discretion of the devisee or legatee. Each case must therefore turn upon its own circumstances, and not a little upon the sentiments and prepossessions of individual judges. With respect to the essential elements which must exist in every precatory trust, it is impossible to add anything to the clear and accurate statement of Lord Langdale, in the case of Knight v. Knight, already quoted. Those essentials are the imperative nature and meaning of the precatory words, the certainty of the subject-matter or property embraced in the trust, and the certainty of the objects or intended beneficiaries. Upon the authority of the more modern decisions, the whole doctrine may be summed up in a single proposition: In order that a trust may arise from the use of precatory words, the court must be satisfied from the words themselves, taken in connection with all the other terms of the disposition, *that the testator's intention to create an express trust was as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in express terms in the ordinary*

*manner.* Unless a gift to A, with precatory words in favor of B, is in fact *equivalent in its meaning, intention, and effect,* to a gift to A, 'in trust for B,' then certainly no trust should be inferred. The early decisions proceeded perhaps upon a more artificial rule, and saw an intention in the use of words of wish, desire, and the like, where no such intention really existed. The modern decisions have adopted a more just and reasonable rule, and require the intention to exist as a fact, and to be expressed in unequivocal language. No other conclusion can be reconciled with the general principles of construction which are based upon reason and universal experience. It has sometimes been stated as a general rule that a prima facie presumption of an intention to create a trust arises from the use of precatory words. Whatever may have been true of the earlier cases, the modern authorities do not, in my opinion, sustain any such rule; it is contrary to their whole scope and tenor."

Turning now to the will before us it is to be noted that there is a failure to use phraseology ordinarily employed in creating trusts. The failure to employ the familiar method of creating a trust argues that no trust was intended, although this is not conclusive.

A rule of construction applied is that if the precatory expressions be found in the same clause or sentence or paragraph with the devise or gift, they are more frequently indicative of an intention to create a trust. See an example in Re Hochbrunn's Estate, 138 Wash. 415, 244 P. 698, 49 A.L.R. 7.

In the case at bar it is to be noted that the words claimed by appellant to create a trust are in a separate paragraph (par. 6) subsequent to and widely separated from the words contained in paragraph No. 2, which give an absolute estate in the land devised.

It has been said: "Ordinarily where an absolute estate is in terms given, precatory words which follow are treated as expressions of wish rather than of will, so that no trust is created." 69 C.J., Wills, § 1832, note 69, and see note 69 giving reason for the rule. In O'Brien v. McCarthy, 52 App. D.C. 183, 285 F. 917, the Court of Appeals of the District of Columbia decided [page 918]: "Even if the precatory words in the residuary bequest were sufficient to raise a doubt as to whether testatrix intended to create a trust, that doubt would have to be resolved in favor of the estate first conveyed to the legatee by absolute bequest." The author of the Annotation "Precatory Trusts", 49 A.L.R. 7, at page 37, says: "Where property is given in terms importing an absolute gift, it has been held that words expressing a hope or wish as to the disposal of the property will not be construed as a limitation upon the estate or interest given. As it is sometimes put, precatory words cannot cut down or diminish an estate given absolutely in the foregoing portion of the will." In 4 Probate Reports Annotated, at page 121, is a note, "Cutting Down Devise", in which it is said: "An ab-

solute, or certain gift is not cut down or controlled by equivocal expressions in other parts of the will", and many cases are cited in support of this assertion, and 5 Probate Reports Annotated a note on Precatory Trusts, at page 146, states: "Whether precatory words in a will shall be accorded such force as to deprive the donee of the absolute right of disposal and thereby qualify the beneficial interest in the gift, must be determined in connection with what may be gathered from the rest of the will as an intention reconcilable with the idea of a trust imposed upon the legal estate, when to impose such a trust would nullify previous expressions in the will and create a repugnancy between its different parts, the rules of construction forbid the attempt." And it has been held that when the testator makes an absolute bequest to a legatee, a subsequent request as to its disposition generally does not cut down the legatee's estate by creating a trust. Clark v. Baker, 91 Conn. 663, 101 A. 9. It is noted that the language of paragraph No. 2 of the will imports an absolute devise of the property therein described. There are in it no words of restriction upon use or alienation. There are no words of defeasance in case the wish or direction is not complied with. Later in the sixth paragraph a reason is given for making this gift. The writer of the note on Precatory Trusts, 5 Probate Reports Annotated, at page 144, 146, says: "Expression of the object or motive of an absolute gift do not create trust" (citing cases). "Where the will clearly shows that the use of the property indicated is merely the motive which leads the testator to make the gift, and, if the beneficiary is not limited in his discretion as to the use which he is to make of it, the gift does not impose a trust." 69 C.J., Wills, sec. 1832. The text cites Baker's Ex'rs v. Baker, 53 W.Va. 165, 44 S.E. 174. In that case the testator made a bequest in the following words: "I will that the balance of my lands not willed shall be sold and the money given to my wife for charitable purposes. I will that the balance of my bonds not willed shall be collected and the money given to my wife for charitable purposes." The court held that the words "for charitable purposes" are mere precatory words containing no command or instructions, but leaving the whole matter to the discretion of the legatee, and further held: "A gift to enable a legatee to confer bounty on others is not a trust, but a beneficial legacy to him." The court quoted 1 Perry on Trusts, § 119, as follows: "But no trust is implied where the words simply state the motive leading to the gift, as where the gift is to a person 'to enable him to maintain the children.'"

In the case at bar the purpose of testatrix seems to have been to have placed at the disposal of her beloved cousin Lola Zimmerly de Abeyta such property as would enable her to exercise the generous disposition with which she was evidently endowed, in her own way and in any direction that she, in her discretion saw proper to care for and maintain the husband of the testatrix during his lifetime. And we may say in passing that there is nothing to suggest that such hope and confidence of the testa-

trix was misplaced. Nor does the fact that this reason or motive is given for the bequest to Lola Zimmerly de Abeyta, indicate that it was the sole reason or motive. The fact that testatrix survived her husband by nearly six weeks indicates that the desire that her cousin Lola should provide for the husband of testatrix was not the sole reason for the bequest, because, if so, it seems likely that she would have changed her will. From all of the foregoing we think that instead of a trust being created the most that could be said is that it was the intention of the testatrix to burden the bequest to Lola Zimmerly de Abeyta with an equitable charge, a restriction in the nature of a condition subsequent, the performance of which is excused because of the impossibility of performance due to the death of the husband of testatrix prior to her own death.

■ It is generally held that where a condition is imposed under a will, the performance of which does not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may as well be done after as before the vesting of the estate, or if from the nature of the act and the time required for its performance it is evident that the intention of the parties was that the estate should vest and the devisee perform the act after taking possession, the condition is subsequent and performance of the act will be excused if it is impossible to comply with the condition at the time of its creation or afterwards becomes so by an act of God or by the testator; the effect being to vest the estate in the devisee, discharged from the condition. See 10 R.C.L., Estates, sec. 22; 21 C.J., Estates, secs. 38, 39, 40. A good illustration of the application of these principles to facts similar to those in the case at bar is to be found in Hoss v. Hoss, 140 Ind. 551, 39 N.E. 255. In that case the testator devised land to two persons, stating that such devises were made to enable the devisees to support testator's insane brother for life and further, that said devises were made on condition that the devisees "would agree with testator's executor to do so". The testator's insane brother predeceased the testator. The court held that the provision for support was a condition subsequent, and therefore excused, and that the provision for the agreement with the executor was a collateral requirement, to be fulfilled after the title had vested. The will in this case, so far as is applicable to the case at bar, was in these words: "Item 1. I give and devise to my sister Eliza J. Hoss (a lot described). Item 2. I give and devise to Flora J. Hoss, the wife of Walter S. Hoss, (a lot described). Item 3. The above gifts and devises are made to said Eliza J. Hoss and Flora J. Hoss to enable them to support and care for my brother Benjamin Hoss, now insane, as long as he shall live, and these bequests are made upon the condition that said Eliza J. Hoss and Flora J. Hoss will agree with my executor to do this. * * *" The court in rendering its decision said, 39 N.E. at page 256: "A condition precedent is one which must be fulfilled before an estate can vest. Beach,

Wills, p. 407; 2 Redf.Wills, 283. A condition subsequent is one, upon the fulfillment or nonfulfillment of which an estate which vests in praesenti may be divested. Beach, Wills, supra; Redf.Wills, supra; Lindsey v. Lindsey, 45 Ind. 552; Rush v. Rush, 40 Ind. 83; Boone v. Tipton, 15 Ind. 270; Petro v. Cassiday, 13 Ind. 289; Doe v. Cassiday, 9 Ind. 63. A devise upon condition that the devisee will render service or support to another is a condition subsequent. Petro v. Cassiday, supra; Boone v. Tipton, supra; Rush v. Rush, supra; Lindsey v. Lindsey, supra. * * *" The court continues as follows: "If · the support of Benjamin Hoss were the only element of the condition expressed by the testator, the question would be decided upon what we have already said; but we find that, while the support of Benjamin Hoss was the first purpose of the testator, the language employed, without ambiguity or shadow of doubt, creates an additional condition, namely, 'that the said Eliza J. Hoss and Flora J. Hoss will agree with my executor to do this.' If this additional condition were a condition subsequent, the position of the appellants would be fortified by the authorities we have cited. If, however, we should consider this condition as standing alone, and as that upon which the estate devised must depend, there could be no doubt that the testator would be held to have created a condition precedent. But can it be said that this condition was one, by the intention of the testator, upon which the estate devised must depend? It is conceded that we must get from the provisions of the will the intention of the testator. As we have said, the central idea and purpose which controlled the devisee was the support of the unfortunate brother, who, being of unsound mind, could not enforce, by business tact or legal proceedings, in his own right, the obligation charged upon the devisees by the testator. In order that some one should represent the testator in carrying out that intention, and that the support of the brother might be enforced by legal proceeding, if necessary, the executor was chosen as the person to be intrusted with that power and duty, and the devisees were required to execute an enforceable contract. This contract could have been nothing more than that implied by an acceptance of the devise, if it had not been designed as a remedy for the enforcement of the testator's object to secure support for Benjamin. * * *" .

As we said in the beginning, it is well to keep in mind the distinction between an express trust and an equitable charge, for in the case of an unenforceable express trust the legatee would normally hold as constructive trustee for the heirs of the testator, in accordance with appellant's contention, while in the case of the mere equitable charge she would hold for herself if the charge is unenforceable. Perry on Trusts (7th Ed.) sec. 152, says: "* * * a distinction must be observed between a devise to a person for a particular purpose, with no intention of conferring upon him any beneficial interest, and a devise with a view of conferring the ben-

eficial interest, but subject to a particular charge, wish, or desire. Thus, if a gift be made to one and his heirs, charged with the payment of debts, it is a gift for a particular purpose, but not for that purpose only; and if it is the intention to confer upon the donee of the legal estate a beneficial interest after the particular purpose is satisfied without exhausting the whole estate, the surplus goes to the donee and does not result. But if the gift is *upon a trust to pay debts,* that is a gift for a particular purpose and nothing more. If the whole estate is given for that one purpose, and that purpose does not exhaust the whole estate, the remainder results to the donor or his heirs. * * *" In the case of In re Foord, [1922] 2 Ch.Div. 519 (1922. F. 660), the English court applied the principle last stated in a case where the testator provided in his will: " 'I will and bequeath to Selim Awad Khim $2000 as well as all my effects and furniture in China but all the valuable things are to be sent to my sister Miss Foord and $500 is to be allowed from my estate for the cost of packing and sending them home. Selim knows what things are to be sent home. All my effects including rubber and all other shares I leave absolutely to my sister Margaret Juliet on trust to pay to my wife per annum (three hundred pounds) with income tax, 100£ (one hundred pounds) to be free of income tax.' * * *" The court held that the gift was to the sister beneficially, subject to and charged with the payment of the annuity. In holding that the testator's sister

took beneficially what was not required to pay the specified income to the testator's wife, the court considered the fact that the word "sister" was used by the testator, saying: "There was no particular reason to describe her as his sister if he was only going to make her a bare trustee." In the case at bar the devise was to the "beloved cousin" of the testatrix. It was also thought that the circumstances that the gift, as in the case at bar, was of non income producing property as well as income producing property was some indication that the sister was entitled to a beneficial interest. The court said: "I find that the Court is prepared to hold that there is a beneficial gift to the first taker on slight expressions and indications of intention."

We think this statement is in accord with the trend of authority. Perry on Trusts (7th Ed) sec. 151 says: "No general rule can be stated, that will determine when a conveyance will carry with it a beneficial interest, and when it will be construed to create a trust; but the intention is to be gathered in each case from the general purpose and scope of the instrument. A conveyance to a wife or child will be presumed to carry a beneficial interest, but such consideration is only a circumstance of evidence. It has been said, that if a man transfer property to another, it must be presumed that it proceeded from an intention to benefit the other by making the gift and conferring the beneficial interest; but if such intention cannot be inferred consistently with all the circumstances attending the transaction, a trust

will result. * * *" And as heretofore stated, there is good ground for saying that if the testatrix had intended other than a beneficial gift to her beloved cousin Lola Zimmerly de Abeyta, there remained a substantial length of time after the death of her husband, upon whom the condition, or equitable charge, if any, attached to the devise, was to operate within which the testatrix would have revoked the gift. See Jackson v. Knapp, 297 Ill. 213, 130 N. E. 524, where it is suggested "whether or not it can be said that the condition was discharged by the act of the testatrix in performing the condition, there is good ground for saying that the testatrix, by performing the condition, waived it" [page 527].

From all of the foregoing we conclude that there is no error in the judgment, and it is affirmed. It is so ordered.

HUDSPETH, C. J., and SADLER, BRICE, and ZINN, JJ., concur.